## THE STATE v. HOUSE.

1. **Criminal Law: INDICTMENT.** An indictment containing two counts, one of which charged the defendant with obtaining property under false pretenses and the other with obtaining the signature to a note by false pretenses, both having reference to the same transaction, was held to charge but one offense, which might properly have been charged in a single count.

2. ———: **PRACTICE.** Certain rulings of the court, in the admission of evidence, in overruling a motion for continuance and in refusing to grant a postponement on account of the withdrawal from the case of the defendant's attorney, considered and approved.

3. ———: **INDICTMENT: OBTAINING PROPERTY BY FALSE PRETENSES.** An indictment for obtaining property by false pretenses is not invalid because of the fact that the false representations were made by the defendant in another county, if the property was delivered to him in the county where the indictment is found.

*Appeal from Polk District Court.*

WEDNESDAY, MARCH 23.

THE defendant was indicted for cheating by false pretenses. The indictment was in two counts. In the first count it was charged that the defendant falsely pretended to one Addison that he, the defendant, was the agent of the firm of H. & R. B. Whittemore & Co., of St. Louis, and was by said partnership duly authorized to collect from said Addison a judgment rendered in the Circuit Court of Rock Island county, Illinois, in favor of said H. & R. B. Whittemore & Co., and against George E. Holmes and said Addison, doing business in the firm name of George E. Holmes & Co., the amount of said judgment being $432.96, and interest, and that said judgment was wholly unpaid; that said Addison believing said pretenses to be true, when in truth they were false, and were known to be false by defendant, delivered to said House four promissory notes payable to the order of said House, for $296.85 each, dated September 6, 1876, and coming due in

one, two, three and four years, and a mortgage on real estate in Polk county owned by said Addison, to secure said notes; that at the time said pretenses were made they were false, and known to be false by said defendant; that said judgment had long prior thereto been paid, but had not been released of record, and the said House was not the agent of said judgment plaintiffs, to collect said judgment.

In the second count the defendant is charged with obtaining by the same false pretenses the signature of said Addison to the same promissory notes, the false making of which it is alleged would be punishable as forgery. There was a trial by jury, and the defendant was found guilty and sentenced to imprisonment in the penitentiary for two years. Defendant appeals.

*R. N. Baylies,* for appellant.

*Smith McPherson, Attorney General,* for the State.

ROTHROCK, J.—I. Before pleading to the indictment the defendant filed a motion to require the prosecution to elect

1. CRIMINAL law : indictment.

upon which offense charged in the indictment the defendant should be required to plead. The motion was overruled. Section 4073 of the Code provides that " if any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtain from another any money, goods or other property, or so obtain the signature of any person to any written instrument the false making of which would be punished as forgery, he shall be punished, etc."

There was but one crime charged in this indictment, and it might well have been charged in one count. The crime consisted in obtaining the execution of the notes by false pretenses. In one count the notes are designated as property, and in the other they are called written instruments, the false making of which would be punished as forgery. They might have been designated as belonging to both classes in one

count, and connected by the conjunction *and* instead of *or* as in the statute, because all that was charged in both counts was one and the same transaction. Of course it will be understood that if the two counts had been based upon separate transactions both could not have been joined in one count, nor in one indictment. See *State v. McPherson,* 9 Iowa, 53; *State v. Nichols,* 38 Id., 110; *State v. Fidment,* 35 Id., 541. We think the motion was correctly overruled.

II. The trial in the court below was commenced on the 5th day of May, 1880. The indictment had been pending about one year. There had been two continuances of the cause. On the 4th day of May, 1880, it being the eighth day of the term of court, the defendant filed a motion and affidavit for continuance until the 14th of May. The motion was based on the absence of the defendant's attorney and the absence of witnesses. The motion was overruled.

2. ——— : practice.

We need not set out the motion and affidavit. In our opinion there is no showing that the court abused its discretion in overruling the motion. There are many facts apparent of record tending to establish the contrary view. There had already been two continuances, one of which was occasioned, it is said, by the defendant failing to appear at the term until after the jury was discharged. The record shows that up to the time of trial the defendant had been represented at one time and another by some five attorneys, and he is also an attorney. The trial was not concluded until the 19th of May, a period beyond that asked for an adjournment to procure witnesses.

III. It will be observed that the notes in question are for an amount much larger than the judgment of H. & R. B. Whittemore & Co. as charged in the indictment. Part of the amount of the notes consisted of a judgment in favor of other parties. A transcript of this judgment was introduced in evidence by the State over the defendant's objection. It is claimed that this was error. If this were all the evidence

introduced by the State, of course it would not, standing alone, tend to prove the allegations of the indictment. But it appears that this judgment was included in the notes, and went to make up the amounts thereof. In proving the alleged false representations as to the Whittemore judgment, and the various conversations between the parties, the other judgment was so connected with that claimed to be fraudulent that it was necessary that the jury should have all of the conversations and acts of the defendants in order to a clear understanding of the facts. We think there was no error in permitting the transcript to be introduced in evidence.

IV. The trial progressed until the 13th day of May, a period of some nine days. The State had introduced its evidence, and the defendant had been examined as a witness in his own behalf, and his counsel had also examined one or more witnesses other than the defendant. The defendant was recalled as a witness by his counsel, and, after answering one or two questions, he stopped short and said in substance that he felt that he was alone—that owing to the condition of his counsel he was not properly represented and defended. Thereupon his counsel withdrew from the case. The court adjourned until the next morning. Upon the opening of court on the morning of the 14th, the defendant's counsel appeared and made an address to the court justifying his action in withdrawing from the case. Remarks were made by the court, and by the district attorney, and by other counsel in the case, and an address was delivered upon professional ethics by a member of the bar not engaged in the trial. The remarks of the court and the district attorney were to the effect that so far as they could judge the defendant had been most ably represented by his counsel. These exercises were continued for some time. At about the middle of the forenoon session the court appointed R. N. Baylies, defendant's present counsel, to appear for him. The newly appointed counsel asked that further proceedings be adjourned until the succeeding Monday to enable him to examine the evidence

which had been introduced, and prepare to make a defense. The motion was overruled, and the court adjourned until afternoon, when the trial proceeded.

That this was a remarkable episode in the trial of a case must be admitted. The protracted addresses which were made on the occasion were delivered in the presence of the jury, and counsel for the defendant urgently demands that the judgment be reversed, because the proceedings were necessarily prejudicial to the defendant.

If it were apparent from the record in the case that the defendant's counsel was intoxicated while engaged in the trial, and upon his withdrawal, because the defendant demurred to being represented by drunken counsel, and the court appointed another attorney to defend and refused an adjournment for a reasonable time to allow an examination of the evidence which had been introduced, the judgment should be promptly reversed. But there is nothing in the record to show that counsel was intoxicated, nor in any way incapacitated from properly discharging his duty to his client. On the contrary, the only imputation against him was made by the defendant, and that was but an insinuation and not a direct charge. That counsel was not possessed of sufficient mental capacity, learning and ability to properly represent his client, was not claimed by any one. The court, whose duty it was to see that the rights of the defendant were properly protected, seems to have been of the opinion that the imputation was made by the defendant against his counsel for the very purpose of obtaining some advantage by a continuance. We cannot say that the court was mistaken in its judgment of the motives of the defendant. The learned district judge who presided at the trial was in a position to observe all that transpired, and we cannot say that he erred. What might be our conclusion if the defendant's guilt were doubtful, we need not determine. The evidence had been introduced on the part of the State, and in our judgment the defendant was guilty beyond all question. He is a

lawyer, and the whole record shows that he is probably possessed of as much shrewdness as any attorney who was engaged in the trial. Immediately upon procuring the notes and mortgage, by the alleged false pretenses, he indorsed them to innocent purchasers for value, and his crime is about the same in enormity as though he had stolen $500 from Addison. He is, of course, wholly insolvent, and because of being unable to pay for printing abstract and argument he has been allowed to present his appeal in manuscript. These considerations lead us to the opinion that the court was correct in believing that the defendant, without cause, and with intent on some advantage, virtually compelled his counsel to withdraw from his defense.

V. The defendant, in the cross-examination of E. J. Addison, the party defrauded, propounded certain questions as to conversations between him and the defendant while the defendant was confined in the county jail. Some of the offered evidence was excluded. We think the examination of the witness which was admitted was sufficient to show his feeling against the defendant if it did not already sufficiently appear. It is said that it was sought to show that Addison corruptly attempted to procure the defendant to falsely testify against the holders of the notes and defeat their collection. We do not understand that, if the questions had been allowed to be answered, the answers would have involved a proposition that Addison intended that the defendant should testify falsely.

VI. Addison is a resident of Polk county, Iowa. Just previous to making the notes and mortgage he was in Wright county, in this State. The defendant went to Wright county and made the demand of payment of the judgments. The evidence tended to show that the false representations were made in Wright county, and that Addison there agreed to make the settlement and execute the notes and mortgage after his return to Polk county. A bond or agreement, as a basis of settlement, was

3. ———: indictment: obtaining money under false pretenses.

drawn up and signed in Wright county, and the parties came together to Nevada, where they procured the notes and mortgage to be written, and came on to Polk county, where Addison executed the instruments and passed them over to the defendant.

The court instructed the jury that the defendant was properly prosecuted in Polk county, and refused contrary instructions, and refused any instructions based on the execution of the bond or agreement in Wright county.

Counsel for appellant strenuously contend that, the false representations having been made in Wright county, the defendant cannot be indicted and punished in Polk county.

This, it appears to us, is a misconception of the elements of the crime charged, which is the fraudulent obtaining of the notes in Polk county. The false pretenses made in Wright county were no crime, and no indictment would lie in that county simply because the notes were not obtained there. The crime was consummated in Polk county, and the court might very properly have instructed the jury that if the notes were obtained in Polk county the indictment would lie, no matter where the false representations which induced Addison to give the notes were made. This proposition appears to us to be too plain for argument.

Complaint is made because the court charged the jury that the indictment contained two offenses. This was error without prejudice. The two counts were for the same thing, only that in one the notes were called property, and in the other instruments the false making of which would be forgery. The jury found the defendant guilty on one count. The same result would have been attained if they had returned a verdict of guilty on both counts. Each was complete in itself, and not different from the other.

It is urged that there could be no trial and conviction in Polk county, because no representations made in Wright county were competent evidence under the indictment. In other words, it is claimed that if it was intended to rely on·

the pretenses made in Wright county, the indictment should have so described the offense. This was not necessary. The crime having been committed in Polk county, and the false pretenses which induced Addison to act having been made elsewhere, every act of the criminal up to the taking possession of the notes was, in effect, a repetition of the falsehoods by which the fraud was accomplished.

We have thus disposed of all the questions presented in this case. We find no error in it, and concur in the opinion that it should be

AFFIRMED.