97 373
108 417

### STATE OF. IOWA, Appellant, v. E. E. PATTY.

**False Pretenses.** Under Code, section 45, subdivisions 9 and 10, making the word "property" embrace real and personal property, and
2 including under personal property, "evidences of debt," a nonnegotiable draft, drawn on an insurance company, by its authorized adjuster, in settlement of a claim, subject to the company's approval, is "property," within Code, section 4073, punishing any person who obtains money, goods, or property, by falsepretenses, though such draft be never approved or accepted.

SAME. Misrepresentations by the insured, as to the age and sound-
1 ness of horses, for the death of which a claim is made under a policy of insurance, may constitute false pretenses, within Iowa Code, section 4073, making it an offense for any person designedly, and by false pretenses, with intent to defraud, to obtain money or other property.

*Appeal from Poweshiek District Court.*—HON. A. R. DEWEY, Judge.

### TUESDAY, APRIL 7, 1896.

DEFENDANT was indicted for the crime of cheating by false pretenses. At the close of the testimony for the state, the defendant moved the court to direct a verdict of not guilty. The motion was sustained, and the state appeals.—*Reversed.*

*Milton Remley,* attorney general, and *J. P. Lyman* for the state.

No appearance for appellee.

DEEMER, J.--The indictment accuses the defend-. ant of having obtained from one, F. C. Overton, as agent of the State Insurance Company, a draft for the sum of three hundred and fifty dollars, by falsely representing to him (Overton), that certain horses, which were covered by policies of insurance, issued by the State Insurance Company, and which horses had been destroyed by fire, were of a certain age, weight, and soundness, whereas, in truth and in fact, the said representations were false and untrue, and were well known by said defendant to be false and untrue at the time he made them. The evidence adduced in support of the indictment, tended to show: That defendant held policies of insurance on his horses, which had been issued by the State Insurance Company. That the horses were destroyed by fire during the life of the policy covering the same. That F. C. Overton was the adjusting agent of the insurance company, and, as such, he called upon defendant for the purpose of ascertaining the extent of, and settling the amount of, the loss. That defendant, then and there, represented that his horses were of a certain age, were each and all without blemish, and were, with some other small items of property, worth the sum of three hundred and fifty dollars. That the representations were false and untrue, in this: that the horses were not of the ages represented, but were, in fact, much older; that they were not sound and free from blemish, but were diseased, lame and blind, and were not worth to exceed the sum of ninety dollars.. That on the strength of defendant's representations, and believing in the truth thereof, Overton issued and delivered to defendant an instrument in writing, of which the following is a copy: "No. 1,625. Iowa State Insurance Company. The Oldest Company in the State. Incorporated 1855. $350. Des

Moines, Io., Apr. 5, 1894. Pay to the order of E. E. Patty three hundred fifty dollars, in full for loss and damage under policy Nos. 45,451–51,819, according to proofs this day made and sworn to, subject to the approval of the board of directors. Not negotiable. To Iowa State Insurance Co., Keokuk, Iowa. F. C. Overton, Adjr." On the face of this instrument appears the following: "Protested for non-payment April 28th, 1894. C. C. Collier, Notary Public." On the back of said instrument appears indorsements as follows: (1) "E. E. Patty." (2) "Pay to the order of Davenport National Bank for collection for account of Citizens' Bank, Grinnell, Iowa. M. Snyder, Prest." (3) "For collection for account of Davenport National Bank, Davenport, Iowa. D. Bawden, Cash."

The defendant's motion was based upon the following grounds: "First. The testimony is not sufficient, under the law, to sustain a verdict of guilty. Second. The testimony fails to show that the defendant obtained anything of value from the insurance company, as stated in the indictment, for the reason that the undisputed testimony shows that the alleged draft, alleged to have been obtained by the false pretenses, is a non-negotiable instrument. There is no proof that said draft has been approved by the board of directors of said insurance company, and said draft states upon its face that payment thereof is subject to the approval of the board of directors of said insurance company, and there is no proof that said board has ever approved the payment of said draft. Third. The undisputed testimony fails to show any false representations on the part of the defendant, made to the insurance company, which representations caused them to part with the alleged draft. Fourth. The undisputed testimony shows that the statements made by the defendent, E. E. Patty, to Overton, adjuster of the insurance company, were

mere expressions of opinion, and not statements of existing facts."

The statute under which the indictment was, found, is as follows: "If any person designedly, and by false pretenses, or by any privy or false token, and with intent to defraud, obtain from another any money, goods, or other property; or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be punished," etc. Code, section 4073. The statements regarding the value of the animals would not, as a general rule, be such as to justify a prosecution for the crime charged. But it is clear that the representations as to the age and soundness of the horses, were statements of fact upon which the adjuster might rely; and, if false, were sufficient, in law, to predicate the crime charged upon them. This question remains, however, did defendant, by means of these false representations, obtain from Overton, any money, goods, or other property? The indictment does not charge that he obtained Overton's signature to the written instrument. If it did, we would have no doubt of the error of the court.

The question here is, is the draft, before its approval by the board of directors of the insurance company, "goods or other property," within the meaning of the statute quoted? It is well settled at common law that bonds, bills, or notes having no intrinsic value, and not imparting any property in possession, but only the evidence of property, could not be stolen or embezzled. And it is equally well settled that the acquirement of such instruments by false pretenses, was not a crime; at least, not punishable until the money or property called for thereby, was reduced to possession. But our Code provides that the word "property" includes personal and real property; and the words "personal property,"

include money, goods, chattels, evidences of debt, and things in action. Code, section 45, subdivision 9, 10. Under this section, we have held that a draft against the government, upon which an action could not be brought, and which had not been indorsed by the payee, was property, under a statute which punished embezzlement of "money or property of another." *State v. Orwig*, 24 Iowa, 102. There is no doubt but that the instrument in question would be the subject of larceny, under the broad terms of the statute defining such crime. The statute under consideration punishes an act which is kindred to larceny and embezzlement, and, in seeking for the meaning of the word, "property," in the statute with reference to cheating by false pretenses, we may well look to the judicial interpretation of like words appearing in the statutes defining similar statutory crimes. It is said, however, that as the instrument was subject to the approval of the board of directors of the insurance company, and was never expressly approved or accepted by them, it had no value. This contention ignores the thought, however, that the instrument, as between the defendant and the insurance company, is an evidence of debt, although never accepted or approved. It was given by the duly accredited adjuster of the company to the defendant, in a settlement between them, as evidence of the amount of his loss, and was an order on the insurance company to pay the same. True, it was non-negotiable, and was subject to the approval of the board; but it was none the less *prima facie* evidence of the amount due the defendant, given after an adjustment of the loss by an agent with authority. The delivery of the paper to the defendant, and its transfer and negotiation by him, are conceded. So that none of these questions are involved. We reach the conclusion that the instrument obtained from Overton was property, and that the case should have

gone to the jury. As bearing upon the question presented, see *State v. House*, 55 Iowa, 466 (1 N. W. Rep. 307); *State v. Thatcher*, 35 N. J. Law, 445; *State v. Porter*, 75 Mo. 171; *People v. Reed*, 70 Cal. 529 (11 Pac. Rep. 676); *People v. Stone*, 9 Wend. 182; *People v. Galloway*, 17 Wend. 540. As the status of the case, so far as the defendant is concerned, cannot be affected by anything we may do, we simply reverse it in order to establish a correct rule of law.—REVERSED.