BILL WILLIAMS v. STATE.

No. A-3744.  Opinion Filed April 8, 1922.
(205 Pac. 772.)

(Syllabus.)

1.  **Trial—Failure to Order Certain Exhibits to be Taken to the Jury Held not Error.**—The failure of the court to order certain oil cans introduced in evidence as exhibits to be taken to the jury room to aid the jury in their deliberations constituted no error. The granting or refusing of such a request is within the discretion of the trial court.

2.  **Same—Practice of Allowing Exhibits Taken to Jury Room Without Defendant's Consent—Impropriety.**—The practice of allowing

the jury to take to the jury room articles introduced in evidence, unless the defendant consents, is of doubtful propriety.

3.    **Arson—Evidence Sustaining Conviction.**—The evidence here, although largely circumstantial and in some respects conflicting, held sufficient to sustain the verdict.

Appeal from District Court, Pittsburg County; Harve L. Melton, Judge.

Bill Williams was convicted of arson and sentenced to five years' imprisonment in the state penitentiary, and he appeals. Affirmed.

Wilkinson, Scott & Hudson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.  Plaintiff in error, Bill Williams, a negro about 45 years of age, in this opinion referred to as the defendant, was by information filed in the district court of Pittsburg county, June 11, 1917, charged with arson in the second degree, by setting fire to and burning an old gin and seed house at Featherston on May 23, 1917. At the first trial the jury failed to agree on a verdict. At the second trial, December 3, 1919, the defendant by a verdict of the jury was found guilty as charged and his punishment fixed at five years in the penitentiary. In due course judgment was rendered accordingly, from which judgment the defendant appeals.

The cotton gin and seed house in question had not been in running operation for some time, and the gin was open and not in charge of a watchman, and stood about 50 feet from the railway tracks. The defendant lived at Wetumka, where his wife had deserted him some weeks previously, leaving him in charge of five children, ranging from 4 to 16 years of age. After finishing his cotton planting, defendant had heard that his wife was staying at a negro settlement in the vicinity of

Featherston or Quinton. On the afternoon of the 23d day of May he took the train to Featherston, arriving there at about 3 o'clock. He went to a store and purchased some lunch and some coal oil, which he claimed he wanted to rid himself and his clothing of certain insects which he had just discovered on his person. He purchased an oil can of a certain kind at this store and carried the oil away with him towards Quinton. At about 9:30 that night the gin and seed house burned and the next day, in a pit under some machinery and debris, there was found a charred oil can similar to the one purchased by defendant.

Defendant claims that he abandoned the search for his wife and took the train from Quinton back to Crowder, where he made further inquiry about his wife and also concerning certain girls whom he wanted to get to keep house for him; that the morning following, at about 10:30 o'clock, while waiting at the depot at Crowder for a train back to Wetumka, he was accosted by three white men who questioned him about his movements and examined his pocketbook and money and roughly conducted him out of the depot. Defendant claims that he had heard that they used negroes rough in that town and supposed they intended to flog him and run him off; that he broke and ran, the men pursuing him and firing eight or nine shots at him. After getting away and hiding in the mountains, bloodhounds were secured, and the defendant was again overtaken and placed under arrest. As to whether the defendant was apprised of the nature of the accusation, or as to whether he knew the men were officers seeking to make his arrest, and as to many other things said and done, the evidence is very conflicting.

The state relied almost wholly upon circumstantial evidence, some of which seems rational, while other portions

are of doubtful probative force. The defendant's explanation of his movements was in part reasonable, and in other portions either indicative of guilt or of bad judgment. There was no motive whatever shown for the commission of the offense. There was no question of fire insurance. The defendant did not know any of the owners of the gin or the parties interested in it. Defendant's former employers testified to his industry, good character, and frugality, and that his reputation had been good for years. Fourteen witnesses testified for the state to the effect that the defendant was at or near the gin with this oil can on the afternoon preceding the fire, and concerning several suspicious movements and declarations of the defendant after the fire. Some of these were in part rationally explained by the defendant and his witnesses.

There are three assignments of error seriously urged in defendant's brief, viz.:

(1) Error of the court in permitting the state to introduce as evidence, for comparison, an oil can similar to the one sold defendant the day before the fire and similar to the one found in the machine pit after the fire.

(2) That the court erred in refusing to permit the jury to take the cans to the jury room for inspection during their deliberations.

(3) That the court erred in refusing to give a mandatory instruction of acquittal on the ground that the evidence was insufficient to support the verdict.

One of the oil cans permitted to be introduced in evidence was one of a dozen the Featherston merchant had in stock and of the same kind and brand that was sold to the defendant on the afternoon preceding the fire, and similar in form

and shape to the one found in the pit after the fire. We think the introduction of these cans for inspection and comparison was, under the circumstances here, proper demonstrative evidence, much safer and more convincing than much of the oral testimony introduced. Gibbons v. Ter., 5 Okla. Cr. 212, 115 Pac. 129; notes 8 A. L. R. 19 to 59.

It would not have been error for the court to refuse to allow these oil cans to be taken to the jury room during the deliberations of the jury. In this case the jury at first requested these exhibits, and, while the court had the matter under advisement, the jury sent word to the court that they did not desire to examine these exhibits. In this regard, so far as we can see, there was no error, prejudicial or otherwise. In a well-considered case, Hopkins v. State, 9 Okla. Cr. 104, 130 Pac. 1101, Ann. Cas. 1915B, 736, notes and annotations, the court said, in substance, that the practice of permitting the jury to take to the jury room such articles or exhibits as clothing, firearms, etc., unless the defendant consents, is of doubtful propriety. As a general rule, where the jury in open court requests permission to take with them to the jury room such exhibits to inspect during their deliberations, the granting or refusal of the request is within the discretion of the trial court.

In view of the fact that this conviction rests almost wholly upon circumstantial evidence, from the facts as recited in the record, without having the privilege of seeing the witnesses or observing their demeanor on the witness stand, we would hesitate to pronounce the defendant guilty. But ordinarily the jury are the sole triers of the facts, and where, as in this case, the evidence is largely circumstantial and conflicting, this court will not disturb the verdict of a jury unless the evidence points to the guilt of another or is so inadequate as to shock the conscience and common sense of the appellate court, indicating a manifest miscarriage of justice.

In this case there was sufficient evidence adduced on the part of the state, excluding the defendant's explanation, which the jury may have been justified in disbelieving, to warrant the jury in finding that the circumstances were sufficient to show beyond a reasonable doubt that the defendant was guilty as charged, and that such circumstances precluded every reasonable hypothesis consistent with his innocence. Taylor v. State, 20 Okla. Cr. 460, 203 Pac. 1049.

The trial court was in better position to know whether the defendant was accorded all his statutory and constitutional rights, and was in better position than this court to determine the weight and probative value of the testimony. Had the trial court been in serious doubt on this point, he would doubtless have granted a new trial.

The judgment is affirmed.

DOYLE, P. J., and MATSON, J., concur.