DR. B. R. REEVES v. STATE.

No. A-9564.   Nov. 29, 1939.
(96 P. 2d 536.)

Mathers & Mathers and Joe Adwon, all of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for the State.

BAREFOOT, J.   Defendant was charged in the district court of Oklahoma county with the crime of attempting to obtain money by false pretense and false representations; was tried, convicted and sentenced to serve a term of six months in the county jail, and pay a fine of $50 and costs, and has appealed.

The statutes under which defendant was charged are: Oklahoma Statutes, 1931, section 2087, 21 Okla. St. Ann. § 1542, which is as follows:

"Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

And also Oklahoma Statutes, 1931, section 1822, 21 Okla. St. Ann. § 42, which is as follows:

"Every person who attempts to commit any crime, and in such attempt does any act toward the commission of such crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempt, as follows:

"1.   If the offense so attempted be punishable by imprisonment in the penitentiary for four years or more, or by imprisonment in a county jail, the person guilty of such attempt is punishable by imprisonment in the peni-

tentiary, or in a county jail, as the case may be, for a term not exceeding one-half the longest term of imprisonment prescribed upon a conviction for the offense so attempted.

"2. If the offense so attempted be punishable by imprisonment in the penitentiary for any time less than four years, the person guilty of such attempt is punishable by imprisonment in a county jail for not more than one year.

"3. If the offense so attempted be punishable by a fine, the offender convicted of such attempt is punishable by a fine not exceeding one-half the largest fine which may be imposed upon a conviction of the offense so attempted.

"4. If the offense so attempted be punishable by imprisonment and by a fine, the offender convicted of such attempt may be punished by both imprisonment and fine, not exceeding one-half the longest term of imprisonment and one-half the largest fine which may be imposed upon a conviction for the offense so attempted."

It is contended that the evidence was insufficient to support the judgment and sentence. A jury was waived and the case was tried before the court.

The evidence revealed that Mrs. Bert Adams was operating a place of business in Oklahoma City, which was adapted for "physical therapy". This seems to be one who practices through the use of "heat, air, light, water, exercise, and medical gymnastics". Section 19 of the Basic Science Act, Session Laws 1936-1937, article 28, chapter 24, 59 Okla. St. Ann. § 719, only exempts one practicing "physiotherapistics", within the limits of his respective calling, from taking the preliminary examination, which is required before taking the examination of the statutory board of examiners of the various branches of the healing art. On or about April 15, 1937, the defendant, Dr. B. P. Reeves, came to the home and place of business of Mrs. Adams, and asked her if she was running a beauty house,

and she told him she was running a "physiotherapy treatment and conditioning place." He inquired if she desired to sell out, and she informed him she did, and showed him through the place, and he asked her "*   *   * if I realized that I was operating against a basic science law, and he said it looked very much like I would have to associate myself with some other doctor, also, to operate, that, as I was operating against the basic science law, and I was subject to so many days in jail and so much fine". Defendant then informed her he was in a position to get her a certificate so she would be protected. That he was working for Dr. J. D. Osborne, whom the record showed was the Secretary to the Basic Science Board, and Secretary to the Medical Board.

The evidence of Dr. Osborne was that the defendant was not employed or working under him, and never had so worked, and that there were no inspectors working under that department. That his records did not show that defendant had been issued a certificate to practice medicine as required by law.

The defendant further stated to the prosecuting witness that he and Dr. Osborne were very close, and anything he did would be perfectly all right with Dr. Osborne. Defendant then went away but called at her place on the following evening about 5:30, and she could not see him because it was too late. He asked if he could come to see her the next day and she told him it was Easter Sunday, and she could not see him until the following Monday. He called Monday and she made an agreement to see him on Tuesday morning, but he did not come until Tuesday afternoon, and she had him come back at 4 o'clock.

In the meantime the prosecuting witness had talked with the officers, and they came out to her place, and the

witness made arrangements for defendant to call on Wednesday. At the time he came the officers came and were concealed in the house where defendant could not see them, but where they could see and hear the conversation between Mrs. Adams and the defendant. The defendant had before Wednesday told her that it would cost $55 to get the certificate, but if anybody asked her about it to say it was $250, as that was the regular price for the certificate. That it would be necessary for her to stand a written examination, but that he would help her. He had her write out an examination consisting of four pages of questions and answers, which were offered in evidence. She gave the defendant a check for $55 on a bank in which she had money deposited. He gave her a certificate. She further testified:

"A. Well, he told me that this was a certificate and would entitle me, I would be free to practice under this basic-science law and I would be entitled to be a doctor and practice under this and I asked him why Dr. Osborne's name wasn't on this and he said it wasn't necessary. Q. You asked him why Dr. Osborne's name wasn't on this, do you mean state's exhibit 4? A. This little business. Q. Yes. A. You see, he was to take this back and was to have this printed on this form. Q. He was to take these two back and have them written like on state's exhibit 4, printed on state's exhibit 3? A. Yes, sir, that is right. Q. And that was to be your certificate? A. Yes, sir. Q. To entitle you to practice? A. That is right. Q. Practice any of the arts under the basic-science law, is that right? A. Yes, sir, that is right. Mr. Mathers: Objected to as being leading and suggestive. The Court: Sustained. Q. Tell the court, whether or not, it was upon the representation of this defendant that you would be entitled to practice the healing arts under the basic science law that you gave him that check for $55 marked state's exhibit 5? A. Yes, sir, I said, 'Now, if I buy that certificate, will I be protected there under all these laws and I

can go ahead and practice without ever being registered?' and he said, 'You absolutely will' ". Q. What were you supposed to do, at that time, to do anything else after you got this certificate in order to practice? A. No, sir. Q. Did you have to see anyone else? A. No, sir. Q. This entitles you to practice? A. Yes, sir; he told me, that I was going to have that with the statement that other people worked for eight or nine years to get it and I was going to get it after 30 minutes of questioning."

Defendant, at the time of his negotiations with prosecuting witness, was wearing a deputy sheriff's badge, and told her, "I have the authority to arrest any person who is practicing under these laws."

Just after defendant had received the check and delivered the certificate to the witness, he was arrested by the officers who were concealed in the house, and all of the articles were taken into their possession, including the check for $55, which the witness had given to defendant.

The testimony of Mrs. Adams was fully corroborated by the officers.

The defendant testified that he had been practicing medicine for a period of 35 or 40 years. He offered in evidence a court record of his license to practice medicine and surgery. This was a certificate issued by the Medical Board of the Choctaw Nation, on the 26th day of June 1899. This certificate had never been filed with the new board, as provided by law. He also testified he was a graduate of the Palmer-Gregore Chiropractic College, and did post-graduate work at the Carver Chiropractic College. That he was president of a corporation of the National Institute and Association of Science and Arts. He claimed that this corporation had authority to issue a certificate to teach physiotherapy, "to teach any science and art." This corporation had a department of Theology, and that Dr. A. E. Smith was dean of it.

Dr. Smith testified as a witness in behalf of defendant.

Defendant testified that he was familiar with the basic-science law, and that he knew that it was unnecessary under this law to obtain a certificate or license to practice as a physiotherapist. That there were other schools in this state which issued certificates to people who desire to practice as a physiotherapist.

He admitted having a talk with Mrs. Adams at different times, in which he told her he believed he could help her get a license which would be of great value to her to show to the general public that what she was practicing was very healing, and especially to have the certificate to hang on the wall for people to see. He further testified as to the arrangements made with her to take the examination, procure the certificate, and the payment of the check for $55. He testified in detail as to the conversation with reference to the size of the certificate she would receive, and as to the price being $250, for which she was to give her note. He also testified to the officers coming out and arresting him and taking the different exhibits that were offered in evidence. He claimed that he did not tell Mrs. Adams that the certificate gave her the right to practice medicine or administer drugs, but that she was qualified to give an incandescent light bath, massage, vibration exercises and gymnastics. The minutes of different meetings of the corporation were introduced in evidence.

Dr. A. E. Smith, as a witness for defendant, testified he was a mechanic and a pastor of the National Spiritualist Church, located at 408½ West Second street, Oklahoma City. He was one of the organizers of the corporation above named. When asked what was its purpose he said:

"To teach classes and to examine persons and see if they are qualified to give them certificates and setting out their qualifications". When asked what subjects they taught he said: "Only healing. It was incorporated to teach only this physiotherapy". He testified under the by-laws that the defendant was authorized to give examinations. He further testified:

"Q. What was required of them to be signed when they became a member of your association, if anything? A. Or to take the examination, take the studies and take an examination or take the examination if they were completed fully with the studies."

The by-laws of the corporation were introduced in evidence. It is unnecessary to quote from them.

The court who tried this case said:

"The Court: Oh, there isn't any question in the world but what this man attempted to hold this woman up for $55, there isn't any question about that and I find him guilty of the offense charged in the information and I find the defendant guilty of the offense charged in the information and fix his punishment at imprisonment in the county jail for a period of six months and to pay a fine of $50."

As to the questions of fact, this judgment and sentence is as binding upon the defendant as a verdict by a jury.

The evidence shows, as stated by the court, that it was the intention of defendant by the means of false and fraudulent intent, to secure from the prosecuting witness the sum of $55. A reading of the evidence convinces any-one of this fact. You cannot tell from the record what the purposes are of the corporation which defendant and others had organized, but it is clear that defendant was attempting to use it for the purpose of securing money by false pretense from those who were gullible and un-

suspecting. His statement that the prosecuting witness was subject to arrest for a violation of the basic-science law, when he himself testified he knew that she did not need a certificate, under that law, to do the things she was doing, shows that defendant was attempting to deceive her. His wearing a deputy sheriff's badge at the very time he was negotiating with her, and the signing of a receipt in full for $250, when only paid $55, shows on its face that this defendant had an intention to obtain this check through false and fraudulent intent. The certificate which was introduced in evidence shows upon its face a false and fraudulent representation. In the face of the certificate it says: "Which entitles her to practice her profession without further examination in the State of Oklahoma, in accordance with the Basic Science Act, which was approved by Governor E. W. Marland, April 19th, 1937." This certificate was left unsigned and when she asked defendant why it was unsigned, he said it was unnecessary. Under this evidence the court was right in finding defendant guilty, and the judgment cannot be set aside.

It is also urged that the court erred in overruling the general demurrer to the information. We have carefully examined the information and are of the opinion it is good as against a general demurrer. In the case of Rhodes v. State, 58 Okla. Cr. 1, 49 P. 2d 226, 231, this court said:

"To constitute the crime of obtaining property under false pretenses the essential elements are: A false statement of past or existing facts by one person to another with intent to defraud; such statement must be reasonably calculated to deceive that other. It must be so designed as to induce such other to part with his property, and such design must be accomplished by means of the false pretenses made use of for that purpose.

"It follows that the evidence must establish the obtaining of the property alleged in the information, or some part of it, that by such delivery the property passed out of the title, possession, and control of the accuser and into that of the accused, and proof of obtaining part of the property described will justify conviction."

In the case at bar the information was for "an attempt to obtain property by false and fraudulent pretense." We presume this was filed because the check had not been cashed and the money obtained thereon. Under the general authorities, we are of the opinion that the cashing of the check was not necessary to complete the crime, and the evidence was sufficient to have alleged the obtaining of the property by false pretense and not as an attempt. Mathews v. State, 19 Okla. Cr. 153, 198 P. 112; Drake v. State, 2 Okla. Cr. 643, 103 P. 878; Mason v. State, 23 Okla. Cr. 111, 212 P. 1028; Blanck v. State, 14 Okla. Cr. 339, 169 P. 1130; Robinson v. State, 48 Okla. Cr. 87, 289 P. 785.

For the reasons above stated the judgment of the district court of Oklahoma county is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.