Hugh A. CARROLL, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12779.

Court of Criminal Appeals of Oklahoma.

Dec. 9, 1959.

Hart & Burger, Pauls Valley, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

## PER CURIAM.

Hugh A. Carroll, Julia L. Carroll, Hershel K. Ross, Lynwood O. Neal and J. Phil Burns were jointly charged by indictment by an Oklahoma County grand jury with the crime of obtaining money under false pretenses. The Carrolls were tried separately from their co-defendants, and after the evidence was in the county attorney asked that the charge against Julia L. Carroll be dismissed for lack of evidence. This was done.

Hugh A. Carroll was found guilty by the jury and his punishment fixed at confinement in the State Penitentiary at McAlester for a period of one year. 21 O.S.1951 § 1542. Carroll now appeals as plaintiff in error, but will hereinafter be referred to as defendant.

The State, while not expressly confessing error, does so in effect by admitting that a certain voluminous State's exhibit, numbered 13, was erroneously admitted into evidence, and in some mysterious manner got into the jury room and was considered by the jury. No one would admit responsibility.

It is further admitted that there was much other evidence heard that was not properly admissible. The Attorney General while in brief tries to sustain venue, goes on to say:

"The indictment is short; its allegations are few; rather too few we must admit. But the situation has been made so complicated by the introduction of such an immense mass of utterly irrelevant matter as to obscure and almost submerge the real issue involved.

Our sympathies are entirely with the prosecution. We are fully convinced that the defendant was guilty; guilty of far more than was or could be alleged in the indictment. We regard the operations of those who owned and controlled Selected Investment Corporation as constituting exactly what the county attorney termed it in his closing argument, 'a tremendous fraud.' Under all of the circumstances, we marvel at the lightness of the sentence imposed by the jury, but we cannot deny the serious character of the questions which are presented."

The questions raised in this case were advanced by co-defendant J. Phil Burns where in an action in this Court he sought a writ prohibiting the trial judge from trying him on the same indictment involved herein. The writ was denied for reasons stated in that opinion, but at the same time for the further guidance of the prosecution of the various defendants, the seriousness of the propositions raised were recognized by this Court. See Burns v. District Court of Oklahoma County, Okl.Cr., 335 P.2d 923.

The question of whether or not the defendant's representations that interest to investors had been paid out of earnings, rather than capital, to arrive at the truth required the testimony of expert accountants and appraisers. The business had grown from a very modest capital structure to many millions; there had been good and bad investments, the business clearly had outgrown the management set-up. It lacked the supervision required of banking institutions. It may have grown bigger than the capabilities of those in charge. At any rate, those in charge had a sacred duty to make only representations to the public that reflected the truth. Guess work could not be permitted. They may be held responsible for statements made to and relied upon by investors who by reason of such statements parted with their money to their detriment, if such statements should be proven untrue.

■ At the same time the founders of this Republic hearing the echoes from the past, "crucify, crucify", and in part by persons who a few hours earlier had only words of acclaim, and where due process was bypassed and conscience assuaged by the "washing of hands" determined as a basic principle that in this country persons accused of crime should be accorded due process of law, and if denied any of their constitutional rights that no matter how guilty they might appear to be, the basic principles of due process could not be permitted to be violated. Otherwise the innocent might suffer. It is with these principles in mind that we proceed.

We shall first consider the claim of the defendant that the State failed to establish venue in Oklahoma County; that the evidence conclusively showed that no part of the crime charged in the indictment involving prosecuting witness E. J. Rader took place in Oklahoma County.

The Oklahoma Constitution, art. II, § 20, provides that in all criminal prosecutions, the accused shall have the right to a trial in the county in which the crime shall have been committed.

We note by amendment to the record that prior to trial, and on August 28, 1958, defendant was allowed by the court to withdraw his plea of not guilty and to plead further. Thereafter, on September 5, 1958 he filed an instrument designated: "Motion to set aside indictment, and demurrer to indictment." As grounds it is stated:

"I. That the grand jury by which an indictment was found had no legal authority to inquire into the offense charged by reason of its not being within the legal jurisdiction of Oklahoma County.

"II. That the indictment does not sufficiently inform this defendant of the acts which he is charged with committing in said indictment."

Defendant closed by a prayer for dismissal. And this was followed by a further motion alleging that the indictment was not found by competent authority and was in violation of his constitutional and statutory rights.

The indictment reads:

"At the regular July, 1958 term of the district court of the Seventh Judicial District of the State of Oklahoma, held in and for Oklahoma County, in the State of Oklahoma, at the City of Oklahoma City, the Grand Jury of said County, twelve good and lawful men, then and there duly and legally empaneled, sworn and charged, according to law, to diligently inquire into, the true presentment make, of all public offenses against said State of Oklahoma committed or triable within said County, upon their said oaths, in the name and by the authority of said State of Oklahoma, do present and find that in said County of Oklahoma in said State of Oklahoma, on the 30th day of October, in the year of our Lord, One Thousand Nine Hundred and Fifty-seven, Hugh A Carroll, Julia Carroll, Herschel K. Ross, Linwood O. Neal, and J. Phil Burns whose more full and correct names are to your Grand Jury unknown, then and there being, did then and there wilfully, unlawfully, and feloniously commit the crime of Obtaining Money Under False Pretenses in the manner and form as follows, to-wit:

"That is to say, the said defendants, Hugh A. Carroll, Julia L. Carroll, Herschel K. Ross, Lynwood O. Neal and J. Phil Burns, in the County and State aforesaid, and on the day and year aforesaid, then and there being, and with intent to cheat, defraud and wrong, unlawfully, designedly and feloniously obtain from E. J. Rader, $6,000.00 good and lawful money of the United States of America, by means and use of false and fraudulent pretenses and representations, that is to say, the said defendants represented and stated to the said E. J. Rader that Selected Investments Corporation and/or Selected Investments

Trust Fund for 26 years had paid 6 per cent per annum from the earnings without interruption and that said E. J. Rader, relying upon the said representations of the said defendants and believing them to be true, parted with and delivered to the said defendants, $6,000.00, when in truth and in fact the Selected Investment Corporation was then and had been paying six per cent interest from the capital investment and not from earnings, all of which the said defendants well knew, and the said defendants knowingly made the false and fraudulent representations with the unlawful, fraudulent and felonious intent to wrong, cheat and defraud the said E. J. Rader out of said $6,000.00 as aforesaid, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Oklahoma."

The court on September 12, 1958 heard evidence in support of the motion to set aside the indictment.

E. J. Rader testified that he lived in Shattuck [Ellis County] Oklahoma, and had for around 30 years. He knew Carroll as president of Selected Investments Corporation. Witness stated that he was acquainted with Walter Lake, a bond salesman at LaVerne [Harper County], Oklahoma; that he had been an investor in Selected Investment certificates since 1936 and had received 6 per cent interest all along; that he thought Mr. Lake was a salesman for Selected Investments and would not know whether or not he was a salesman for United Securities. Witness said that in October, 1957 he went to the office of Walter Lake at LaVerne [Harper County] and signed an order for a total of $6,000 worth of certificates, purchased for his grandchildren, two certificates of $3,000 each; that he paid Lake $6,000 and Lake was to send it to Selected Investments Trust Fund; and that he later picked up the certificates from Mr. Lake.

Witness was asked:

"Q. I will ask you then, Mr. Rader, if you will tell the court what statements were made by Mr. or Mrs. Carroll? A. I could not say. They were not there.

"Q. They weren't there? A. No, sir.

"Q. Then, neither Mr. or Mrs. Carroll made any statements to you? A. No, sir.

"Q. What statements were made by Walter Lake? A. None at all. I never asked him anything."

Witness said that he had bought bonds from Lake before; that he just bought the bonds and that Mr. Lake delivered them later. Witness stated that prior to this purchase, he had received "News Letters" from Selected Investments reiterating that though not guaranteed, the Company had always paid 6 per cent interest, which was from earnings. He said that since the purchase he had never demanded that his $6,000 be returned.

Witness said on cross-examination by Mr. Berry, County Attorney of Oklahoma County, that the certificates that he received were signed by Hugh A. Carroll, President; Julia L. Moore, Secretary; and Linwood O. Neal, Treasurer. He stated that the first two certificates that he purchased, 24 years previously, were purchased from Mr. Carroll. He did not say where. He said that he had always received 6 per cent interest. Witness said that Selected Investments had annual meetings, and in 1957 he attended meetings at Shattuck and LaVerne; that Phil Burns and Mrs. Burns and Mr. Johnson were present. He said Burns told the investors that 6 per cent interest on Selected Investment certificates was not guaranteed, but that the interest was paid out of earnings, and not out of principal.

Walter Lake testified that he lived at LaVerne, Oklahoma, and was acquainted with E. J. Rader and also with Hugh A. Carroll and Julia L. Carroll, and J. Phil

Burns. He denied that he had been associated in any official capacity with Selected Investments Trust Fund or Selected Investments Corporation, but stated that he was the representative at LaVerne for United Securities Sales Corporation. He said that corporation sold securities of the Selected Investments Trust Fund. He said that on October 30, 1957 E. J. Rader came to his office with Mrs. Rader to make an investment for their grandchildren. That Rader made a check payable to Selected Investment Corporation for $6,000, and signed a purchase order for certificates which were delivered later. He said that he made no representations to Mr. Rader at that time, but had always told his clients that they would receive the first 6 per cent earned, but that if it was not earned, they would not get it. He said this information was in the quarterly bulletins and that he had heard it at Investor's meetings. He said his investor had attended a meeting on October 21, 1957 when Mr. J. Phil Burns and his wife had held a meeting, but that no one was there from Selected Investments.

A number of persons who served on the grand jury that indicted the defendant testified to the matter of their voting the several indictments, and concerning certain news letters purportedly sent out by Selected Investment Corporation with dividend checks, wherein it was represented that, though not guaranteed, 6 per cent interest had always been paid on Selected certificates out of earnings.

■ At the conclusion of the evidence in support of defendant's motion, and after hearing argument on demurrer as to the sufficiency of the indictment, the court overruled both the motion and demurrer. Defendant excepted. Also at the conclusion of the State's evidence the defendant moved to dismiss as to the defendant, and demurred to the evidence. The court overruled the motion and demurrer, although at the close of the State's evidence venue had not been proven. If the demurrer to the indictment had been sustained, the action would have had to be dismissed and new indictment sought or the prosecution could have been proceeded with by complaint and information, if desired. We assume that the court was of the opinion that venue might even be established during the course of the testimony for the defense. We have so held. There was a calculated risk in upholding the indictment but there were a number of questions that might have to be settled by appeal. While we have been liberal in the matter of the proving of venue, we have always required that it must somehow be proven. See Kilpatrick v. State, 90 Okl.Cr. 276, 213 P.2d 584, and cases cited; Burns v. District Court of Oklahoma County, supra.

■ The general rule is that the crime of obtaining money by false pretense is completed where the money or property is obtained. Owens v. State, 22 Okl.Cr. 419, 211 P. 1059; and we have held that it is not essential that a defendant who has obtained a check shall have cashed it. Reeves v. State, 68 Okl.Cr. 163, 96 P.2d 536. Indeed, it has been held that the subsequent history of the travels of the check are only incidental. After the crime was committed, it is immaterial who eventually got the check or its proceeds. Updike v. People, 92 Colo. 125, 18 P.2d 472.

The general rule has been enlarged in Oklahoma by statute, 22 O.S.1951 § 124, which provides:

"When a public offense is committed, partly in one county and partly in another county, or the act or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

What are the acts relied on by the State to show that the crime, or at least part of it, occurred in Oklahoma County, so as to meet the constitutional requirements that an accused shall have the right to a trial in the county in which the crime shall have been committed?

First, it is claimed that though the money in form of a check, was paid in

LaVerne, Harper County, and the application for the certificates executed there, that the same were forwarded by United States mail to and received by the Selected Investment Corporation in Oklahoma County, and thus venue was fixed in Oklahoma County.

Both the State and the defendant cite in support of their positions the case of Bozarth v. State, 56 Okl.Cr. 424, 41 P.2d 924. In that case the district judge of Okmulgee County had assigned his salary for a number of months to a Bank in Henryetta, Okmulgee County, and the bank received certain payments, but Bozarth began to file duplicate claims which were mailed to the State Auditor in Oklahoma City and the Auditor did not discover that certain claims were duplicates and the Auditor paid the claims presented by the bank, and also the duplicate claims forwarded by Bozarth by placing salary warrants in the mails in Oklahoma City, addressed to Bozarth at his address in Okmulgee County, and Bozarth was charged in the district court of Oklahoma County with obtaining property under false pretenses. Defendant claimed that in that the warrant was received and cashed by him in Okmulgee County that such fixed the venue in that county, and not in Oklahoma County.

Judge Edwards of this Court reviewed the authorities on this point in some detail, and held:

"One who, by means of a false claim, sent from one county in the state to another county therein and thereby induced a person in the latter county to deposit property in the United States mail for the person making such claim, may be prosecuted in the latter county [county where letter mailed] for obtaining property by false pretenses, since the United States mail is the agent of the person to whom addressed."

Judge Edwards, in the Bozarth case, at the close of the opinion and apparently as an afterthought, stated that there were other reasons for sustaining venue in Oklahoma County, and cited Okl.St.1931, § 2730 (22 O.S.1951 § 124), and Troup v. State, 51 Okl.Cr. 438, 2 P.2d 591, and being to the effect, as provided by statute above quoted, that where an offense is partly committed or acts constituting offense occur in two or more counties, prosecution therefor may be had in either county. While this, as we have seen, is a correct statement of the law, it was not developed as to what acts might have made possible the prosecution in Okmulgee County. There had been certain instruments of assignment made in favor of the Henryetta Bank, and representations made to the Bank, but the representations made to the State Auditor caused him to issue the duplicate warrants in favor of the defendant fixed venue where communicated, and that would be Oklahoma County.

So, in Bozarth v. State, supra, we learn that where false pretenses have caused one to part with money, venue lies where the money was paid or placed in the mails addressed to the person making the false claims, which in this case was at LaVerne, Harper County.

We now consider the matter of the false claims affecting venue. The false claims relied on were, as the evidence shows, made by way of statements set out in News Letters or pamphlets. So the question is whether venue would be fixed where the written false pretenses were received and acted upon, or where pamphlets mailed.

When Carroll testified in his own defense he admitted responsibility for the statements in the News Letters of Selected Investments Corporation wherein it was in effect stated that 6 per cent interest had always been paid to investors in certificates of Selected Investment Trust Funds out of earnings, and not out of principal. The State asserts that there was evidence that such dividends had been paid out of capital; that the evidence supported the finding of the jury of guilty. There was conflicting testimony from auditors and a mass of reports, but the problem of determining whether false representations were made rested with the jury, under proper instructions by the court.

If venue in Oklahoma County can be gleaned from the testimony of the State's witnesses, such will be sufficient. The entire evidence may be considered. But there is no dispute as to the facts that we have recited. The problem is simply to apply the law to the facts.

■ We would first point out that there is no evidence that the defendant made any representations to Mr. Rader in any county except that Carroll did say he was responsible for all statements appearing in Selected Investments News Letters, and Rader had testified that he had read in the News Letter of October 1, 1957, statements that interest on Selected Investment Trust certificates had always been paid out of earnings, etc. That he relied on that, and the fact that he had for 24 years received 6 per cent interest on previous investments. It was never established from where the News Letters were mailed, but that would be immaterial, because by persuasive authority it is held that a false pretense mailed in one county and received in another is made in the county where received or actually communicated, and not where it is placed in the mails. See State v. Gibson, 132 Iowa 53, 106 N.W. 270.

The Gibson case is also authority for the proposition that venue may be laid where the false representations are made, or in any county where payments were made by reason thereof, such holding being based on a statute similar to the Oklahoma statute on the subject. 22 O.S.1951 § 124, and being in line with Bozarth v. State, supra.

In Troup v. State, supra, this Court cited the Gibson case with approval. And while in the Troup case it was not required that this Court pass on the specific question as to whether a false pretense mailed in one county and received in another is made in the county where received or in the county where placed in the mails, and while this Court's action therefore constituted dicta, nevertheless, it did quote with approval the statement from the Gibson case where the Iowa Supreme Court said [132 Iowa 53, 106 N.W. 271]:

"Under the evidence there can be no doubt that the defendant made the false pretenses with which he is charged in Polk county, Iowa; for the applications were there received and acted upon by the insurance association. Placing the same in the mail to be forwarded to the insurance company was not, so far as the criminal aspect of the case is concerned, a false pretense in the county where the applications were prepared or received by the defendant. State v. House, 55 Iowa 466, 8 N.W. 307."

The reasoning back of the rule appears irrefutable. The false pretense statute, 21 O.S.1951 § 1542, provides:

"Every person who, with intent to cheat and defraud another, designedly, by color or aid of any false token or writing, or other false pretense, * * obtains from any person any money or property, is punishable by imprisonment * * *."

■ Obviously then, the false pretense is an element of the offense only insofar as the money is obtained "by color and aid thereof". The making of the false pretense is an act "constituting or requisite to the offense" only when it is the means by which the money is obtained. It can be the means only when, and not until, it is communicated. Therefore, until the false pretense is received, it cannot be the inducement to part with the money. As a libel and slander has no life until it is published, the false pretense has no existence until it is communicated to the proposed victim. It is not made until received and read by him.

From what has been said then, there was no evidence in this particular case to place venue of the crime charged in Oklahoma County, and defendant's constitutional rights were violated. Art. II, § 20, Okl. Const. This means that the prosecution if pursued must be in the county where the money was paid, to wit: Harper County, or in Ellis County where the news letter was received and read.

We do note from the evidence that the court, over the objections of the defend-

ant, permitted Paul Truskey of Oklahoma City, and who had been a Yellow Cab driver for many years, to testify as to his experience with the defendant in Oklahoma County. He said that he had saved money until he had amassed a total of $6,100 most of which was from wages. He visited the office of Selected Investments Corporation in Oklahoma City and talked to the defendant Carroll, who made to him the representations with reference to the earnings of Selected Investment Trust Fund certificates, and the $6,100 was paid over to Carroll in reliance on his statements that the company had since 1929 earned enough to pay the cost of operating the business, and pay the stockholders 6 per cent. Here was a perfect case so far as venue is concerned. The money was paid in Oklahoma County, and the representations made in Oklahoma County. The issue would have been whether the representations were true or false.

While this effectively disposes of the within case, the defendant was entitled to a correct ruling on his demurrer prior to the hearing of evidence in the case. For such reason and for further guidance in any other prosecutions, we further conclude that it is necessary to say, and we do say that the general demurrer to the indictment heretofore quoted should have been sustained.

The question presented by the general demurrer to the indictment is a basic matter, and being whether the indictment has set forth all the elements of the crime charged. The Constitution of the United States, Fourteenth Amendment, and the Constitution of Oklahoma, art. II, §§ 17 and 20, guarantee that such must be done.

The Oklahoma constitutional provisions have been implemented by statute. 22 O.S. 1951 § 401 reads:

"The indictment or information must contain:

"1. The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.

"2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

The statutory provision above has been construed by this Court many times.

In Harry v. State, 59 Okl.Cr. 302, 58 P. 2d 340, 343, the defendant was charged with receiving a deposit in an insolvent bank. No demurrer was filed to the indictment. The only way the defendant could prevail on appeal was to show that no crime was charged. It was the conclusion of the Court under the circumstances that the matter omitted did not tend to the prejudice of the substantial rights of the defendant upon the merits.

The case of McCarty v. State, 46 Okl.Cr. 332, 287 P. 1053 was quoted, where it is said:

"An information is sufficient if it pleads every element essential to charge the crime pleaded, in plain, concise, and intelligible language, and apprises the defendant in an intelligible way of precisely what he must be prepared to meet."

Judge Doyle, who wrote the opinion for the Court in the case of Harry v. State, supra [59 Okl.Cr. 302, 58 P.2d 343], went on to say, however, in the body of the opinion:

"It is an elementary principle in criminal jurisprudence that every material fact essential to the commission of a criminal offense must be alleged in the indictment or information.

"There can be no conviction or punishment for a crime without a formal and sufficient accusation. In the absence thereof the court acquires no jurisdiction whatever, and if it assumes jurisdiction, the trial and conviction are a nullity."

To the same effect is Fletcher v. State, 2 Okl.Cr. 300, 315, 101 P. 599, 23 L.R.A.,N.S., 581; Wilcox v. State, 13 Okl.Cr. 599, 166 P. 74, and many other cases cited in Stokes v. State, 86 Okl.Cr. 21, 189 P.2d 424, 429, 190 P.2d 838.

Counsel for the defendant in brief states that at trial the case of Ireton v. State, 29 Okl.Cr. 266, 233 P. 771 was relied on as supporting the indictment in this action. This Court in Burns v. District Court of Oklahoma County, supra, pointed out that Judge Edwards, who wrote the opinion in the Ireton case, warned:

"We do not want to be understood as approving this information as a model; it is far from that, but it is not under the record of this case fatally defective [335 P.2d 930]."

The evidence in the Ireton case disclosed that the defendant's daughter, Hattie, owned valuable real estate and defendant negotiated a loan purportedly for his daughter and took one Mary Doe along and introduced her as his daughter Hattie, and in due course he and Mary Doe obtained $3,000 on account of the loan, secured by a mortgage on Hattie's land, based on the signature of said Mary Doe posing as his daughter Hattie. The defendant did not testify, and offered no evidence. There was no question as to defendant's guilt. The court disposed of the case principally under authority of the harmless error doctrine (22 O.S.1951 § 1069) and passed over certain errors in the information.

In the Ireton case it was held that when the indictment was considered as a whole it could readily be ascertained by inference why the complaining witness was giving up his money. We discover no such inference or implication in the within indictment heretofore quoted. No facts are alleged from which it could be inferred why, or for what purpose, Rader paid $6,000 to the Selected Investments Corporation and/or Selected Investments Trust Fund. There is nothing in the indictment which mentions that Carroll was attempting to sell either stock in Selected Investments Corporation or trust certificates in Selected Investments Trust, or his connection with said entities. No mention is made as to what Rader was to get for his $6,000; and it is not alleged that whatever was given Rader for his $6,000 was not worth the face

amount. It is left to speculation and inference as to the facts of the injury suffered, if any. An actual defrauding must be alleged. Reeves v. State, supra.

In the case of Taylor v. Territory, 1909, 2 Okl.Cr. 1, 99 P. 628, Judge Doyle reversed a conviction for obtaining money by false pretenses because of a defective indictment. The opinion was concurred in by Judges Furman and Baker, and in paragraph 1 of the syllabus, it was stated:

"An indictment for obtaining money by false pretenses, charging that the defendant falsely and fraudulently represented that he was the owner of certain lots, etc., which fails to allege that the prosecuting witness was thereby induced to, and did, loan the defendant said sum of money, is fatally defective, and a general demurrer thereto should be sustained."

As said by Judge Doyle in the body of the opinion:

"To constitute the crime under our statute [21 O.S.1951 § 1540], three things are essential: First, a false representation as to an existing fact; second, a reliance on that representation as true; and, third, it must be the moving cause which induced the owner to part with his property."

This principle was reiterated by this Court in the later case of Reeves v. State, supra, 1939, where Judge Barefoot for the Court, in paragraph 1 of the syllabus, said:

"To constitute the crime of obtaining property by false pretense, there must be a false representation or a statement of a past existing fact, made by accused, or some one instigated by him, with knowledge of its falsity, with intent to deceive and defraud, and which is adapted to deceive the person to whom it is made; a reliance on such false representation or statement; an actual defrauding; and an obtaining of something of value by accused or someone in his behalf, without compen-

sation to the person from whom it is obtained."

 A person charged with crime is presumed innocent until proven guilty. When the indictment or the information is prepared the person accused is presumed to know nothing in regard to the crime except as he is informed by the written accusation filed against him. It is not incumbent upon one accused of crime to listen to news broadcasts and to go to newspapers to secure information about the offense he purportedly has committed. The particular circumstances showing every element of the offense charged must be stated in the indictment or information. Such binds the State and the accused is then in position to prepare his defense, if any he has.

We make these observations so that future indictments or informations that may be filed in Oklahoma County against any of the defendants named in the within indictment, where venue shown, or in Harper County or in Ellis County, if the proper authorities decide to file, may not be subject to the objections urged in the within case.

By a reading of the indictment hereinbefore set out in full, it will be noted that a conspiracy to defraud through the sale of trust certificates was not charged. If such had been the case, the State could have then set forth in the indictment the nine overt acts allegedly committed in furtherance of the conspiracy. Under such a situation venue would lie in any county where any one of the overt acts was committed. Williams v. State, 16 Okl.Cr. 217, 182 P. 718. However, as we have seen, the six codefendants named in the instant indictment were charged with nine separate crimes involving isolated and specific sales of trust certificates, which in the within case limits the prosecution to the county where the specific defendant made the false representations and/or received the money or property from the person induced by and relying on such false representations.

The Attorney General admits error in the admission by the court of State's Exhibit 13, for the reason, as he states, that the audit containing some 44 pages included a period of time after the transaction which formed the basis of the within prosecution and during a latter portion of the time the troubles of the investors of Selected Investments Corporation had thickened and even litigation had begun, a situation which would naturally be reflected in a loss of revenue. Then on top of that, as stated by the Attorney General:

"To further complicate the situation this exhibit in some undisclosed manner got into the jury room and several jurors testified to having examined and commented upon the same, particularly page 27, which set forth a list of $2,400,000 worth of securities which belonged to the trust fund, but were held in the name of Hugh Carroll, personally. Also, it appeared that the defendant held only one share in Selected Investments Corporation."

 If every other feature of this prosecution could be said to be perfect, this case would have to be reversed for new trial on account of this glaring error that the State confesses it cannot defend. Ordinarily, even where exhibits were properly admissible, it is the court who orders such exhibits to be taken to the jury room. Under such conditions the granting or refusing of such a request is within the discretion of the trial court. Williams v. State, 21 Okl.Cr. 161, 205 P. 772; Crossett v. State, 96 Okl.Cr. 209, 252 P.2d 150; Brown v. State, 52 Okl.Cr. 307, 4 P.2d 129; Irby v. State, 18 Okl.Cr. 671, 197 P. 526. And it could be expected that if the State made the request counsel for the defendant would be present and have the opportunity to be heard in case of protest. The same would apply as to the State where defense counsel would make the request. But here, on hearing neither the reporter nor the bailiff could explain by what authority the exhibit in question got into the jury room, or who took it in. Under such conditions, the argu-

ment of defense counsel that the trial court lost control of the jury has merit.

There are a number of other propositions urged, and particularly the matter of the manner by which the grand jury by vote would return a true bill, and prejudicial argument to the jury that nine thousand investors contacted by mail had not a good word to say for Mr. Carroll. Such propositions will not be treated in that we cannot conceive how they might come up in future actions where the State would be governed by the previous decisions of this Court.

The case is reversed and remanded by reason of lack of venue of the crime charged being in Oklahoma County, and the action as to the defendant Carroll is ordered dismissed, except that it may be refiled in Harper County, where the money was paid, or in Ellis County where the representations in News Letters relied on as basis for the charge were found to have been communicated, if the prosecuting officials in either of such counties are satisfied that the evidence will support a proper indictment or information.