[Crim. No. 949. Third Appellate District.—December 2, 1926.]

THE PEOPLE, Respondent, v. HARRY C. BOCCHIO, Appellant.

[1] CRIMINAL LAW — OBTAINING PROPERTY BY FALSE PRETENSES — AMENDMENT OF INDICTMENT—DISCHARGING ONE DEFENDANT.—In this prosecution for the crime of obtaining property by false pretenses, the trial court did not err in permitting the district attorney to amend the indictment, where the amendments were of merely clerical errors and the defendant suffered no prejudice therefrom; the trial court did not err, upon motion of the district attorney, under the provisions of section 1099 of the Penal Code, before the defendants had gone into their case, in discharging one of the defendants in order that he might be a witness for the People.

[2] ID. — OTHER STATEMENTS — INTENT — EXPRESSION OF OPINION—PLEADING.—In such a prosecution, the evidence is not limited to the precise representations alleged, but other statements made at the same time and tending to throw light upon those charged and upon the intention with which they were made are admissible; and the defendant is not injured by the denial of his motion to strike from the indictment certain expressions of opinion and the allegation of the falsity thereof, where proof of such expressions is admissible without pleading them, and such proof is made at the trial.

1. See 7 Cal. Jur. 1003; 14 Cal. Jur. 91.

[3] ID.—FALSE PRETENSES—DELIVERY OF PROPERTY—VENUE.— Where the false pretenses are made in one county and delivery of the property of the prosecuting witness is made in another county, the venue may be laid in either county.

[4] ID.—MISREPRESENTATIONS OF BONDS — PROSPECTUS AS EVIDENCE. Where the false representations were made for the purpose of convincing the prosecuting witness that the stock of a certain real estate corporation was valuable and a desirable investment, the trial court did not err in admitting in evidence a certain prospectus given by defendant to the prosecuting witness, and wherein it was falsely represented that the bonds of said real estate corporation "have been certified by the state bank commissioner as legal investment for savings banks."

[5] ID. — EVIDENCE — INTRODUCTION   WITHOUT OBJECTION — FURTHER EXAMINATION UPON SAME SUBJECT MATTER.—In such prosecution for obtaining property by false pretenses, two of the witnesses for the prosecution (a husband and wife) having testified without objection that the defendant admitted having sold certain bonds belonging to them and had not accounted for the proceeds, but reported that the brokerage company went broke and the stock got lost, and that defendant thereafter told them that he sold the stock, that he knew he had done wrong by not telling them that he had sold the stock and in telling them that it got lost, defendant's rights were not prejudiced by the action of the trial court in permitting one of said witnesses to further testify, over defendant's objection, that defendant did not give back his money, but for the stock that was supposed to have been lost he gave them certain shares of stock in the real estate corporation in which the prosecuting witness had been induced to acquire certain shares through the false pretenses giving rise to the prosecution of defendant.

[6] ID.—CORROBORATION.—In this prosecution for obtaining property of the prosecuting witness by false pretenses as to the value and desirability of stock in a certain real estate corporation, the defendant's letters showing such stock to be worth only a fraction of the value represented to the prosecuting witness, the statements in the prospectus and other papers given to said witness and the testimony of another witness to whom defendant had made similar false representations as to the value of such stock, constituted sufficient corroboration of the testimony of the prosecuting witness to meet the requirements of section 1110 of the Penal Code.

[7] ID. — FALSE REPRESENTATION — PROSPECTUS AS EVIDENCE — INSTRUCTIONS.—In such prosecution, the trial court did not err in instructing the jury, in response to a question from one of the jurors, that the prospectus which defendant had given to the

complaining witness, and which contained the false statement that the bonds of the real estate corporation in question had been "certified by the state bank commissioner as legal investment for savings banks," could be considered as a representation in the case even though it was not signed; and the giving of such instruction in no manner invaded the province of the jury.

(1) 16 C. J., p. 435, n. 73; 17 C. J., p. 287, n. 52; 25 C. J., p. 622, n. 71.    (2) 17 C. J., p. 286, n. 30 New; 25 C. J., p. 644, n. 3.    (3) 16 C. J., p. 195, n. 51, p. 196, n. 64; 17 C. J., p. 322, n. 50; 25 C. J., p. 590, n. 88.    (4) 25 C. J., p. 644, n. 3.    (5) 17 C. J., p. 322, n. 51. (6) 16 C. J., p. 712, n. 30.    (7) 16 C. J., p. 926, n. 62, p. 929, n. 86, p. 941, n. 62.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. H. L. Preston, Judge. Affirmed.

The facts are stated in the opinion of the court.

Peter A. Breen for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant has appealed from the judgment herein and the order denying his motion for a new trial.

The defendant and Eric Von Hoetzendorff were jointly charged by the indictment herein with the crime of obtaining property by false pretenses. [1] Appellant contends that the court erred in permitting the district attorney to amend the indictment. The parts of the indictment material to the question thus raised are as follows: "The said defendants, and each of them on or about the 10th day of May, one thousand nine hundred and twenty-three in the County of Mendocino, State of California, and before the filing of this indictment: *That said defendants, and each of them,* with intent to defraud Andrew Hoefer of his property hereinafter set forth (then follow allegations of certain false representations); that said Andrew Hoefer . . . was by reason of such false pretenses and representa-

tions . . . induced to and he did convey and transfer to said
Harry C. Bocchio, certain real property . . . and also as-
signed and delivered to said Harry C. Bocchio ten 7½%
gold bonds of Central Creameries Company; . . . that said
real property and said bonds were so secured and obtained
by said defendant unlawfully, knowingly and designedly to
defraud said Andrew Hoefer; that the market value of the
capital stock of said Monta Vista Estates at the time said
representations were so made by defendant . . . was not
. . . in excess of six dollars per share." The indictment was
amended by striking out the words herein italicized and the
colon proceeding them and by substituting the word "de-
fendants" for the word "defendant" in each of the last two
places where the latter word appears in the parts quoted.
In a subsequent part of the indictment it is alleged "that
said defendants when they so made said representations,"
etc. It is clear that the amendments were of mere clerical
errors and that the defendant suffered no prejudice there-
from. The indictment was further amended by striking out
all reference to the real property alleged to have been ob-
tained by defendants and by reducing the alleged value
of the property obtained by defendants from $22,000 to
$10,000, the latter sum having been originally alleged to be
the value of the bonds referred to in the indictment. Before
the defendants had gone into their case on motion of the
district attorney, under the provisions of section 1099 of the
Penal Code, the court discharged the defendant Hoetzen-
dorff in order that he might be a witness for the People.
No error appears in any of the foregoing proceedings.

[2] The false representations alleged in the indictment
are: "That the market value of the capital stock of said
Monta Vista Estates . . . was then the sum of forty dol-
lars per share; and that the stock of said corporation had
for a long time prior thereto been selling for the sum of
forty dollars per share; and that the actual value thereof
was far in excess of said sum; *and that said stock would pay
income of from fifteen to twenty per cent in dividends an-
nually, and that by reason of that fact the price of said stock
would advance in a short time thereafter, probably within
thirty days.*" The defendant moved the court to strike out
the parts of such allegation which are herein italicized and
the subsequent allegation of the falsity thereof. The motion

was denied. It does not appear in what manner the appellant was injured by the ruling. Proof of the alleged expressions of opinion would have been admissible without pleading them and such proof was made at the trial. In cases such as this the evidence is not limited to the precise representations alleged, but other statements made 'at the same time and tending to throw light upon those charged and upon the intention with which they were made are admissible. (*People* v. *Donaldson,* 36 Cal. App. 63, 66 [171 Pac. 442] ; *People* v. *Rogers,* 35 Cal. App. 123, 126 [169 Pac. 399] ; *People* v. *Brecker,* 20 Cal. App. 205, 214 [127 Pac. 666].) Since such expressions of opinion were properly before the jury as evidence, without reference to the averment thereof, it does not appear that the appellant's rights could have been prejudiced by the allegation thereof in the indictment. It is not to be presumed that the verdict was based upon such expression of opinion, because the court instructed the jury that ''a fraudulent pretense is such a fraudulent representation of an existing or past fact by one who knows it not to be true (as) is adapted to induce a person to whom it is made to part with something of value.'' The jury could not have believed that the alleged expression of opinion as to future profits was a ''representation of an existing or past fact.''

Monta Vista Estates is a corporation. At the time of the alleged commission of the crime charged it was the owner of certain properties in Santa Clara County, encumbered with a bonded indebtedness of $200,000. At some time not stated the appellant purchased 1666 shares of the capital stock for $10,000, or at the price of about $6 a share. Andrew Hoefer is a well-to-do farmer of German birth, residing in Mendocino County. Eric Von Hoetzendorff also is of German birth, a polished gentleman who has traveled much and who would be a baron ''if the old order had continued'' in Germany. Appellant employed Hoetzendorff to sell Monta Vista Estates stock and it was understood between them that the latter was to endeavor to sell some of the stock to Hoefer at $40 a share. In the early part of May, 1923, Hoetzendorff succeeded in exchanging 300 shares of the stock for certain real property belonging to Hoefer. A few days thereafter appellant and Hoetzendorff visited Hoefer at the latter's home for the purpose of inducing him to

purchase additional stock, and it was during that visit that
the alleged false representations were made by appellant.
Hoefer testified that appellant made the alleged representa-
tions. He also testified that, in connection therewith, ap-
pellant gave him a purported prospectus of the Monta Vista
Estates and other papers, all of which were admitted in
evidence. Among other statements contained in the pros-
pectus is the following, relating to the corporation's bond
issue of $200,000: ''These bonds have been certified by the
State Bank Commissioner as legal investment for savings
banks.'' The other papers gave a detailed statement of the
''approximate gross yearly revenue'' of the corporation,
based in part upon statements of fact and in part upon esti-
mates, and a detailed statement of the ''appraisal of the
properties,'' stating: ''These figures are based on the market
value of the properties, and not at what they would bring
at a forced sale. On the other hand, they are lower than
the cost of duplicating them today.'' Hoetzendorff testified:
''I got the prospectus from Mr. Bocchio in his office. . . .
Mr. Bocchio told me he prepared it.'' He also testified
that he told Hoefer that ''according to the booklet the bonds
of the Monta Vista were legal bank investments.'' The
evidence shows that the bonds had not been certified as a
legal investment for savings banks. There is also evidence to
the effect that the properties of the corporation were of less
value than was stated in the said appraisal. Emma C.
Heckenleichtner testified that she purchased 250 shares of
Monta Vista Estates stock from appellant in April, 1923,
at $20 a share; that thereafter appellant gave her 40 addi-
tional shares of the stock in settlement for stock of another
corporation which she had entrusted to him for sale and which
he had sold without accounting to her for the proceeds, and
that prior to such settlement, in May, 1923, he wrote her that
the Monta Vista Estates stock, ''in the New York Exchange,
was selling for forty dollars a share.'' May 19, 1923, ap-
pellant and Hoetzendorff executed a written agreement to
the effect that the latter was to sell stock of the Monta Vista
Estates and that the amounts received therefor above $9
a share was to be divided between them. March 29, 1923,
appellant made a written proposition to J. F. Whitehorn
to sell some of the former's Monta Vista Estates stock at
$12 a share net. May 21, 1923, he directed Whitehorn to

"sell for my account and risk, one thousand shares of the capital stock of the Monta Vista Estates . . . at a net price of ten dollars per share." June 22, 1923, he wrote Whitehorn: "In regards to the Monta Vista Estates, Inc., I am still in a position to purchase such stock as I desire at the price of $6.00 per share, and I am willing to do this for you at any time that you send me the money." Appellant was not an officer of the corporation or in any manner connected therewith, except as the owner of 1666 shares of its stock. The corporation did not prepare or issue the prospectus and "it was no literature connected" therewith. The defendant did not testify at the trial and the evidence to the effect that he made the alleged representations stands uncontradicted. In exchange for 311 shares of stock of Monta Vista Estates, Hoefer assigned and delivered to defendant ten gold bonds of Central Creameries Company, which the defendant thereafter sold for $10,050. Hoefer caused these bonds to be sent to a bank in San Francisco, which bank, under his directions, there delivered them to defendant and received the shares of stock from him for Hoefer.

[3] Appellant contends that, since the bonds were delivered to defendant in San Francisco, the offense, if any, was committed in that place and that, therefore, the superior court of Mendocino County, "had no jurisdiction of the offense charged," that "the false pretenses themselves are not unlawful and do not themselves constitute a crime; . . . the crime is the taking of the money." It may be said as truly, however, that the mere obtaining of the property does not constitute a crime, but the false pretense is a necessary element thereof. While there is some conflict in the decisions, it has generally been held that "where a false pretense is uttered in A, and the money obtained in B, the venue may be laid either in A or B." (Wharton's Criminal Law, 11th ed., sec. 1473.) This rule follows logically from the fact that a complete crime, in such a case, has not been committed in either place, but partly in one and partly in the other. The rule is statutory in this state. "When a public offense is committed in part in one county and in part in another, or the acts or the effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." (Pen.

Code, sec. 781.) There is no conflict between this section and section 777, which provides that, "except as herein otherwise provided, the jurisdiction of every public offense is in the county wherein it is committed," and then states an exception to the rule. Section 777 doubtless relates to offenses committed wholly within a county and, if the offense is committed partly in two or more counties, a reasonable construction of the section would be that jurisdiction is limited to such counties.

[4] It is contended that "the court erred in admitting the prospectus in evidence." The false representations were made for the purpose of convincing Hoefer that the stock of the corporation was valuable and a desirable investment. In view of the well-known restrictions upon investments by savings banks, the statement in the prospectus that the bonds of the corporation "have been certified by the state bank commissioner as legal investment for savings banks" would tend to create the belief that the property of the corporation by which the bonds were secured had a value greatly in excess of the amount of the bonds. Any representations by defendant as to the value of the property, tending to support his statement that the stock was worth $40 a share, were clearly admissible in evidence.

[5] John Heckenleichtner, the husband of the witness, Emma C. Heckenleichtner, testified without objection that the defendant admitted having sold certain bonds, hereinbefore mentioned, belonging to the Heckenleichtners, and had not accounted for the proceeds, but he reported "that the brokerage company went broke . . . and the stock got lost"; and that thereafter the defendant said to the witness: "I have sold that stock. . . . I know I done wrong by not telling you I have sold that stock and telling you it got lost." The witness was then permitted to testify, over defendant's objection: "He did not give me back my money; he gave us forty shares of the Monta Vista Estates for those stocks that were supposed to get lost." Mrs. Heckenleichtner had previously testified, without objection, that the defendant had made a false report relative to the sale of the stock in question and had thereafter delivered 40 shares of Monta Vista Estates stock in place thereof. The evidence to which objection was made, there-

80 Cal. App.—10

fore, related exclusively to matters already in evidence, and cannot be held to have prejudiced defendant's rights.

[6] Appellant contends that the evidence is insufficient to justify the conviction and that there is no such corroboration of Hoefer's testimony as is required by section 1110 of the Penal Code. The defendant's letters, some of them written shortly before and others shortly after the sale of stock to Hoefer, amply show that the stock was worth greatly less than $40 a share. The statements contained in the prospectus and other papers delivered to Hoefer tend to corroborate his testimony that the false pretenses were made. The testimony of Mrs. Heckenleichtner that the defendant wrote her, about the time of the alleged false representations, that "the stock in the New York Exchange was selling for forty dollars a share" also corroborates the testimony of Hoefer. (*People* v. *Helmlinger*, 69 Cal. App. 139 [230 Pac. 675]; *People* v. *Whiteside*, 58 Cal. App. 33 [208 Pac. 132]; *People* v. *Wymer*, 53 Cal. App. 204 [199 Pac. 815]; *People* v. *Mace*, 71 Cal. App. 10 [234 Pac. 841].) The corroboration was sufficient.

Appellant urges that the district attorney was guilty of prejudicial misconduct in his argument to the jury. It does not appear, however, that the bounds of legitimate argument were transcended.

[7] In answer to a question by one of the jurors as to whether the prospectus could be considered "as a representation in this case even though it is not signed," the court replied that it could be so considered. Appellant contends that this "was an instruction upon a question of fact, and also upon a question of fact not within the issues of the case." What evidence the jury may consider is a question of law, usually decided by the court in ruling upon its admissibilty, but its weight and effect are for the jury's determination. The answer of the court here in question in no manner invaded the province of the jury. The false statement in the prospectus that the bonds of the corporation had been "certified by the state bank commissioner as legal investment for savings banks," and to which statement the question of the jurors referred, was proper to be considered by the jury in determining whether Hoefer's testimony was corroborated. An examination of the whole

case leads to the conclusion that the defendant was fairly tried and justly convicted.

The judgment and the order are affirmed.

Thompson, J., *pro tem.*, and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 31, 1927.