# RIDDLE v. STATE.

No. A-11793. Sept. 16, 1953.

(261 P. 2d 469.)

Robert Hickman, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, John F. Riddle, defendant below was charged by information in the district court of Tulsa county, Oklahoma, with having on June 9, 1950 committed the crime of obtaining money in the sum of $29.82 from the Kitchen Craft Company of Tulsa, Oklahoma, by means of false and fraudulent representations and pretenses, in violation of the provisions of Title 21, § 1541, O.S. 1951. In said information it was more particularly alleged that as an employee of the Kitchen Craft Company "he had sold merchandise in the amount of $100.54, and had obtained a written contract as evidence of same, and by means of such representations and presenting of said contract to the company, received $29.82 in good and lawful money of the United States of America from the said Kitchen Craft Company of Tulsa, Oklahoma, said defendant knowing at the time that said representations and contract were false, fraudulent and untrue and were made by said defendant with the false, fraudulent and felonious intent then and there on the part of said defendant to beat, cheat and defraud the said Kitchen Craft Company of Tulsa, Oklahoma, out of the sum of $29.82 in good and lawful money of the United States of America, contrary to the form of the statutes in such cases made and provided," etc. The sufficiency of the information was never questioned. The defendant was tried by a jury, convicted, his punishment set at 6 years in the State Penitentiary; judgment and sentence was entered accordingly from which this appeal has been perfected.

The facts as developed at the trial are briefly as follows: It appears that the defendant under the assumed name of John Howard, while an escapee from the Missouri State Penitentiary, obtained employment as a salesman for the Kitchen Craft Company of Tulsa, said company being individually owned by Mr. V. G. Grimm. The defendant's job was to conduct home demonstrations of said heavy aluminum kitchen ware, obtain contracts from prospective purchasers, which after the purchasers were approved as to credit rating, the merchandise would be delivered to the said purchaser and a delivery receipt would be signed by the customer which would be returned by the salesman to the office, then from the invoice of sale the salesman's account would be credited with the amount of the sale, and the salesman's commission account would be credited with 30% commission. The purchaser would thereafter pay for the same in installments under the contract provisions.

On the foregoing method of operation on June 6th a contract was presented supposedly executed by Mrs. O. D. Oberfell of Tulsa for purchase on monthly installments, in the total sum of $100.54. The proof shows that this sum was taken from the contract itself and the customer's order sheet which reflects that the cost of the merchandise to the customer was $99.40, with tax thereon at $2, bringing the customer's cost to $101.40, less a purported deposit of $10, plus $9.14 charge designated as C.C. (carrying charge), all together totaling $100.54. The cash deposit was apparently paid by the defendant himself since it is re-

flected on the company records as having been received. This contract was approved and handled as hereinbefore set forth and according to defendant alias Howard the merchandise was delivered to Mrs. O. B. Oberfell. The company records disclose the defendant's account number under the alias of John Howard was credited with this sale which would give the defendant a commission thereon at 30% of $29.82. About 45 days later no payments were made thereon. Mr. Grimm contacted Mrs. Oberfell, and he concluded this contract was fictitious. A check of the defendant's transactions disclosed eight such fictitious contracts, all of which were plain forgeries. The defendant was contacted in Dewey, Oklahoma, and admitted to Mr. Grimm the Oberfell contract was fictitious. Mrs. Oberfell's name and address had been obtained at a demonstration. The defendant advised Mr. Grimm that several sets of the kitchen ware could be found at 5 North Louisville, Tulsa, Oklahoma, where he formerly resided. The defendant then executed a letter under date of August 3, 1950 addressed to "To Whom It May Concern", on Kitchen Craft Company of Tulsa, stationery, reading as follows, to wt:

"This will certify that all Kitchen Craft Merchandise at 5 No. Louisville was obtained by me by illegal means and is the property of the Kitchen Craft Co. of Tulsa. Merchandise is to be returned to Kitchen Craft Co. of Tulsa. Signed by (Signature) James Howard."

On authority of the letter the merchandise stored in the garage was recovered by the company. Mr. Grimm testified on the representations contained in the Oberfell contract, and the succeeding transactions and representations based thereon the defendant alias John Howard was paid his commission. It appears from the company ledger sheets the defendant was paid on June 9, $26.45 in advance commissions in Check No. 933 dated June 10 the sum of $190 and in Check No. 936 on June 12 the sum of $20. Objection as to Check No. 930 in the sum of $26.45 was made, and was sustained on the ground it had no bearing on the case, it having been explained theretofore in the record without objection that the check in the sum of $26.45 was a payment by check by the company to Guy McMahon on defendant's car which the company had purchased for him, so he could get around and contact prospects. We are of the opinion the trial court erred in excluding this check, for it was just as much an advance against defendant's commission as were the checks made directly to him. The record shows that no particular check was issued to cover any particular sales commission of 30% but credit is given on sales, against which advances or payments on commissions are made. The defendant's account for June reflected total sales of $1,272.80 and commissions of $386.60 against total advances of $514.33, leaving the defendant in debt to the company in the sum of $172.72. In the credits received by the defendant was the purported Oberfell contract commission on the sale of $100.54. It was on the Oberfell contract that the state based its case. It was definitely established by Miss Sturm, testifying for the state, that the defendant presented the Oberfell contract, received the merchandise, presumably delivered it, and returned the delivery receipt covering the same, and his account was credited with the commission.

It appears that a contract was presented from a Mrs. McBride of Tulsa executed June 12, 1950, for the purchase of a set of said kitchen ware in the sum of $131.04, to be paid for on monthly installments and credited to the account of John Howard as hereinbefore set forth. No payments were ever made by Mrs. McBride. Mr. Grimm contacted Mrs. McBride, who was the defendant's wife's mother, and concluded the contract was fictitious. He then contacted the defendant and told him of his conversation with Mrs. McBride, and that the contract was a false contract, and informed him he could not continue in his employment, for he could not trust him with so much merchandise, without some kind

of surety, lest he repeat such a procedure. The defendant then gave him a second motgage on his car as security, for continuance of the employment.

Miss Finley, who was a bookkeeper in the Kitchen Craft office at the time in question, testified, without objection, she called Mrs. McBride concerning her contract. Mrs. McBride told her she had no such ware and was not going to make any payments; and attempted to testify Mrs. McBride told her she did not sign the contract; this was stricken by the court and the jury admonished not to consider it. She did testify without objection that she sent out notices to Mrs. Oberfell that her payments were not being met and Mrs. Oberfell came in and said she had no Kitchen Craft ware. Mrs. Oberfell was not called as a witness. She should have been called if available, it would have obviated the defense contention of hearsay. The state rested and the sufficiency of the evidence was not raised by the defendant.

The defendant then testified in his own behalf in substance as follows: John F. Riddle admitted he sought and got employment as James Howard, because he was an escapee .from the Missouri State Penitentiary, and feared his identity would be disclosed if he used his true name. He admitted he worked for the Kitchen Craft Company from the latter part of March, 1950, until August, 1950. The defendant testified the McBride contract was written to obtain a premature Christmas gift for Mrs. McBride, his mother-in-law. He admitted Mr. Grimm knew nothing about him writing that contract. But he testified Mr. Grimm was aware of the fictitious nature of the Oberfell contract, that he executed Mrs. Oberfell's contract at Mr. Grimm's direction, but Mr. Grimm did not tell him to sign it. He said write it up and turn it in. The fallacy of this testimony is obvious, for what use would it have been unsigned. Why would Mr. Grimm urge the execution of a fictitious contract, unsigned; it certainly would not have been accepted by the financier. He explained that both he and Mr. Grimm needed money. That it was at a time when he was planning on buying a car, and Mr. Grimm was in financial difficulty. This is an obvious inconsistency, because the record shows the company had purchased a car for him. If Mr. Grimm was in such financial straits he certainly would not have done so. Earlier in his testimony he testified Mr. Grimm told him to sign the Oberfell contract so he could use it with the finance company. Such inconsistencies connected with his incredibility in light of his prior record makes his testimony unbelievable. He admitted executing the letter of admission directed to "To Whom It May Concern". hereinbefore described. He contended there was no writing on the letter at the time his signature was affixed thereto, the only thing on it was August 3, 1950. This testimony in this regard is also unbelievable, particularly in light of Miss Finley's rebuttal in relation thereto. He admitted he received certain other checks from the company which were not identified in the record, which he cashed. He further admitted there were three or four fictitious contracts which he turned in to the company, that the Oberfell contract was one of them.

Other contracts including the John Rayburn contract were admittedly fictitious. The proof disclosed the defendant was paid a commission on the Oberfell contract. It may have been partially covered by Check No. 930, June 9 in the sum of $26.45 car payment made by the company for him, and certainly it was covered in Check No. 933 issued on June 10 in the sum of $190. It is well to recall, as hereinbefore set forth, the record shows checks in payment of commissions were not issued to cover each commission earned by a specific sale but payment was made, as in this instance, in a lump sum against accrued credits or on advances. While this may appear to be a variance in the pleadings and the proof it is not of a material nature. Snider v. State, 71 Okla. Cr. 98, 108 P. 2d 552; Stokes v. State, 86 Okla. Cr. 21, 189 P. 2d 424, 190 P. 2d 838.

Mr. Grimm denied he was in financial difficulties, but testified fictitious contracts were detrimental to his business and he could not meet expenses on such contracts. He further stated he financed his paper through the factory and that he "was intelligent enough to know it would be a penitentiary offense for me to assign contracts that were false." He denied that he told the defendant to sign any of such contracts.

Miss Finley in rebuttal testified that she wrote the latter on August 3 in its entirety in relation to the Kitchen Craft property to be found in the garage at 5 Louisville street in Tulsa, and that there was no signature on the letter when she wrote it. This is a positive denial of the defendant's evidence in relation thereto.

The foregoing summary of the evidence indicates the sufficiency of the same to support the conviction herein. Hence we are of the opinion that the defendant's first contention that the evidence was insufficient for the reason the state relied on hearsay evidence and the extrajudicial confession of the defendant make out the corpus delicti is without merit. It has been held that corpus delicti may be established by circumstantial evidence. Barrett v. State, 57 Okla. Cr. 259, 47 P. 2d 613. In Gorum v. State, 60 Okla. Cr. 248, 251, 63 P. 2d 765, 766, in the body of the opinion we find the following pertinent language:

"That a crime has actually been committed must necessarily be the foundation of every criminal prosecution, and this must be proved by other testimony than a confession; the *confession being admitted merely for the purpose of connecting the accused with the offense charged.* (Emphasis supplied.)

"In the instant case the evidence clearly establishes the actual commission of the offense charged. The confessions of the defendant were voluntarily made and were properly admitted. The corpus delicti may be establishd without showing that the crime charged was committed by the defendant.

"In Green v. State, 7 Okla. Cr. 194, 122 P. 1108, this court held: 'In every criminal prosecution, it devolves upon the state to prove, first, the corpus delicti; second, that the crime charged was committed by the accused.' Held further: 'The "corpus delicti" means, when applied to any particular offense, the actual commission by some one of the particular offense charged.'

"In Mays v. State, 19 Okla. Cr. 102, 197 P. 1064, 1068, we said: 'This court adheres to the rule that a conviction cannot be had on the extrajudicial confessions of the defendant without independent evidence of the corpus delicti, and, before such confessions should be admitted, there should be evidence prima facie sufficient to show that the offense to which the confessions relates has been committed. * * *' "

Herein the evidence of the state in chief establishes the crime charged by some one, through contracts in the company files which were "clearly forgeries" etc., the circumstances indicate it was committed by the defendant, his extrajudicial confession clearly connected him with it, hence our conclusion that the evidence was sufficient as against the defendant's contention.

The defendant next contends that in instruction No. 6 the court applied the wrong statute. The action was based on Title 21, § 1541, O.S. 1051, and he contends it should have been based on Title 21, § 1542, O.S. 1951. He contends that section 1541 refers only to confidence games. He cites in support of this contention Rucker v. State, 88 Okla. Cr. 15, 195 P. 2d 299, 303, 199 P. 2d 221. Therein it was expressly stated, "This section * * * defines several offenses". Section 1541, O. S. 1951, Title 21, reads as follows:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, * * * by means or by use of * * * false or fraudulent representation,

or statement or pretense, * * *. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. * * *"

It is apparent that while defining "confidence game" as an offense it also clearly defines "obtaining money under false or fraudulent representation, or statement or pretense". The provisions of § 1542 reads as follows:

"Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

The language of section 1542, every person who, with intent to cheat or defraud another by color or aid of any false pretense and obtains from any person any money or property, etc., is broad enough to cover the crime charged herein.

But notwithstanding the foregoing conclusions the state had the right to elect under which statute the offense would be lodged. In Curtis v. State, 86 Okla. Cr. 332, 193 P. 2d 309, 310, the rule was stated:

"Under the provisions of Title 21 O.S.A. § 23, an act or omission which is made punishable in different ways by different provisions of the code may be punished under either of such provisions but in no case can the accused be punished under more than one. Under such conditions the State may elect under which section the prosecution may be maintained."

Citing a long line of authorities in support thereof. The trial judge did not err in instructing the jury under § 1541, Title 21, O.S. 1951.

The defendant asks in event of an affirmation of this conviction, a reduction in sentence to 3 years as provided under § 1542. He bases this request on alleged misconduct of the prosecutor in introducing hearsay testimony, and in handing the defendant a number of unidentified contracts and asking him to pick out the false ones. These tactics certainly were not according to good practice, and may have resulted to the defendant's prejudice to some extent even though not substantial. Because of the foregoing improprieties at the trial, under the provisions of Title 22, § 1066, O.S. 1951, the sentence herein imposed will be and is hereby modified to 5 years in the penitentiary. As so modified the within judgment and sentence is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.