STATE of Oklahoma, Plaintiff in Error,

v.

Andrew H. LAYMAN, Jr., Defendant in Error.

No. A–12977.

Court of Criminal Appeals of Oklahoma.

Dec. 14, 1960.

Mac Q. Williamson, Atty. Gen., Robert D. Simms, County Atty., Tulsa County, Tulsa, for plaintiff in error.

R. L. Davidson, Jr., James G. Davidson, Tulsa, J. A. Rinehart, El Reno, for defendants in error.

POWELL, Presiding Judge.

A. H. "Herb" Layman, Thomas Clinton Layman, and Andrew H. Layman, Jr., on

March 15, 1960 were indicted by a grand jury in Tulsa County, and charged with having "obtained money by means of false pretenses in violation of Title 21 O.S.Supp. 1953, Section 1541." Pertinent portions of such citation read:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property or valuable thing, * * * by means or by use of * * * false or fraudulent representation or statement or pretense, * * *. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine of not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. * * *"

The trial court at time of his ruling referred to Section 1542[1] of O.S.1951, Title 21, and the State did not offer objection or reiterate that the indictment had been made under Section 1541 as therein stated. Such section is commonly known as the "hot check" and "confidence game" statute, and the maximum penalty possible to impose is much greater than that of Section 1542.

As we view it, such is not important in the solution of the issue presented by this appeal, as the trial court did not pass on the sufficiency of the indictment or the sufficiency of the evidence to make out a prima facie case. The court simply ruled that the evidence disclosed a lack of venue or territorial jurisdiction in Tulsa County.

---

1. 21 O.S.1951 § 1542 reads: "Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

In Riddle v. State, 1953, 97 Okl.Cr. 206, 261 P.2d 469–474, this Court held that both of said sections of Title 21 were broad enough to cover a charge of obtaining money by means of false and fraudulent representations and pretenses, and further held that the State had a right to elect under which statute the offense would be lodged, citing 21 O.S.A. § 23, and Curtis v. State, 86 Okl.Cr. 332, 193 P.2d 309, 310.

The indictment alleges among other things, that the defendants had entered into a contract as Layman & Sons, Contractors, on July 1, 1957 for the laying of an eight-inch soil sub-base of a highway designated as Federal Aid Project No. I–591(20); that the contract provided for method of payment, etc. Then it is alleged that certain claims were filed; that the defendants did represent to the State of Oklahoma that the eight-inch soil sub-base, as per contract, had been entirely completed as to quality and quantity, but that in truth and fact the said estimates and claims were false and fraudulent, and that the State, relying on the estimates or claims, paid defendants the sum of $24,156.65 in excess of the amount due.

It is noted that defendants were not charged with obtaining tickets for more truck loads of material than actually delivered, but the language of the indictment made an overall charge for failure to deliver on such job in total, sufficient materials necessary for the creation of a compacted eight-inch sub-base, as per contract.

Seven indictments were returned, all identical as to form, venue and offense charged, differing only as to project number or contract and the amount of the warrants or sum of money obtained.

When defendants were arraigned in case No. 18452, the within case, they filed a motion to quash the indictment on the ground and "for the reason that the venue of any offense charged therein does not exist in Tulsa County, Oklahoma, and that said indictments do not allege any offense and that said indictments should be quashed and set aside for the following additional reasons: * * *" Some twelve additional grounds are set out, not requiring examination in this appeal, as will appear.

Hearing on this motion was set for April 18, 1960, but the court permitted defendants to enter pleas. Each plead "not guilty" and bond was filed. Thereafter, on April 20, 1960, the court heard evidence of the defendants in support of their motions to quash, but overruled the same. They were again arraigned, entered pleas of not guilty and defendants' appearance bonds were allowed to stand.

Prior to trial defendants sought pre-trial inspection of the preliminary report of the Federal Bureau of Public Roads concerning the engineering re-examination and investigation of U. S. Highway 66, 51st Street by-pass (Skelly Drive) in Tulsa County. That matter had to be settled in this Court. See Layman et al. v. State, Okl.Cr., 355 P.2d 444 (August, 1960).

Also, prior to trial each of the defendants named filed his separate motion, citing as authority 22 O.S.1951 § 838,[2] moving for separate trials, which the court granted. At election of the State, the court ruled that the trial proceed against Andrew H. Layman, Jr. The case proceeded to trial on October 3, 1960.

At the conclusion of the opening statement of counsel for the State, defense attorneys moved the court "to acquit, discharge and release the defendant for the reason that the statement of the county attorney is insufficient to show any violation of the laws of the State of Oklahoma, or the commission of any public offense by the defendant, and for the further reasons that the statement affirmatively shows that there is a lack of venue in Tulsa County, a

2. "When two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court."

lack of territorial jurisdiction, and that the statement affirmatively shows that the venue of this offense, if any, lies within Oklahoma County."

██ The court overruled the motion, but stated that further consideration would be given to the question of venue at the conclusion of the evidence.[3]

Defense counsel then outlined to the jury the defense against the charge, and the State produced some fourteen witnesses. The State concluded its evidence on October 10, 1960. At that time defense counsel dictated the following motion:

"Mr. Rinehart: Comes now the defendant, Andrew H. Layman, at the conclusion of all the evidence of the State and demurs to the evidence because the opening statement of the county attorney and the evidence of the State affirmatively establishes there is no venue or territorial jurisdiction of the offense charged in Tulsa County, Oklahoma, and makes it impossible to establish the same by any further evidence that might later be introduced in the trial.

"The defendant further demurs to the evidence for the reason that the same fails to prove the offense charged in the indictment or any other public offense against the laws of the State of Oklahoma. We would like to present that, your Honor."

The court excused the jury.

"The Court: Mr. County Attorney, I advised you last Friday that from my study of the cases that I was convinced that the venue of this case did not lie in Tulsa County, and I think at that time I told you that I would recess the case over the week-end to give you opportunity to study the matter further. I called your attention to the Carroll case [4], the Burns [5] case, and Bozarth case [6], so I will hear from you at this time whether you have found anything that might alter the court's opinion."

The State attempted to distinguish the cases mentioned by the trial court from the within case.

On completion of argument, the court had the jury recalled, reviewed the case, noted the principles of law involved as gleaned from Oklahoma cases and cases from other jurisdictions, and applied the law as he viewed it, to the evidence before him, as it involved venue. The court then announced that in view of the applicable authorities, it was the judgment of the court that the motion to dismiss for lack of venue must be sustained, and that having reached such conclusion it was unnecessary to pass upon the demurrer.

It was stipulated that the evidence as to venue would be the same in case No. 18452 as to the other two co-defendants, and thereupon the court made the same ruling as was made as to Andrew H. Layman, Jr.

The State of Oklahoma has appealed from the ruling of the court on a question of law reserved, pursuant to the provisions of 22 O.S.A. § 1053 [7].

Casemade and petition in error were filed herein on October 25, 1960. Briefs were filed and oral argument was heard on December 7, 1960. We have recognized the

---

3. Venue may be waived and may be proven by circumstantial evidence. And where proven at any point in the case, this Court has upheld convictions. See Burns v. District Court of Oklahoma County, Okl.Cr., 335 P.2d 923; Kilpatrick v. State, 90 Okl.Cr. 276, 213 P.2d 584; Thompson v. State, 89 Okl.Cr. 383, 208 P.2d 584; Fannin v. State, 65 Okl.Cr. 444, 88 P. 2d 671.

4. Carroll v. State, Okl.Cr., 347 P.2d 812.

5. Burns v. Dist. Ct. of Oklahoma County et al., Okl.Cr., 335 P.2d 923.

6. Bozarth v. State, 56 Okl.Cr. 424, 41 P. 2d 924.

7. Appeals to the Court of Criminal Appeals may be taken by the State in the following cases, and no other:
    \*     \*     \*     \*     \*
    "3. Upon a question reserved by the State."

importance of this case as affecting other cases pending in Tulsa County against the defendants herein involved, and have advanced consideration of this appeal.

We shall consider the evidence produced only so far as it sheds light on venue or territorial jurisdiction of the district court of Tulsa County.

The evidence disclosed that the contract between the Laymans and the State of Oklahoma for the laying of an eight-inch soil sub-base of a highway designated as Federal Aid Project I-591(20) to be constructed in Tulsa County was entered into between the parties at Oklahoma City; that as the work would proceed the resident engineer for the State Highway Department at Tulsa, working with his inspectors, would make inspections as to quantity and quality of materials, and reports or estimates on work completed were prepared by the resident engineer, and were checked and signed by one of the Layman partners designated, approved by the Resident Engineer and then by the Division Engineer of the State Highway Department, and then sent to the comptroller's office of the State Highway Department in Oklahoma City, and there audited, and after approval by the Highway Commission or the Director of the Commission, the estimates would then be sent to the State Budget Director, Oklahoma City, for audit and approval, and he prepared warrant as payment of claim and transmitted the same to the State Auditor's office, also located at the State Capitol, in Oklahoma City, and on the form provided, prescribed and prepared by the State.

Burton Logan, State Budget Director, testified for the State and identified each estimate and each warrant issued by the State Auditor and State Treasurer in payment for the laying of the sub-base here involved.

Witness on cross-examinaton said that it was his duty to see that the particular estimate was approved by the State Highway Commission or its director. He further testified:

"The Court: You may tell us what the procedure is before your office will give your final approval for that payment.

\*　　\*　　\*　　\*　　\*　　\*

"A. When this claim comes over to the budget office for preaudit, the contract itself is pulled and the claim audited in accordance with the contract. Now, we don't know how much has been delivered or what overruns or underruns, except as specified and certified by these people who approve this claim. And we have returned claims as an over-sight.

\*　　\*　　\*　　\*　　\*　　\*

"The Court: I have ruled he can tell us what the procedure is, and he is telling us that, as I understand.

"A. These claims come over, they are certified by the accounting department and the construction engineer. Now those are the two people we require in the budget office to sign these claims.

"Q. (By Mr. Rinehart) What happens to it then when it comes to your office? What is the procedure then? A. Then it is audited, pre-audited. If the extensions are proper against the proper fund, the claim notarized and the claimant signs it, we process or prepare a state warrant, a state warrant to the claimant, as signed here (indicating). Then this warrant is given along with the claim to the state auditor, and he in turn places his signature on this claim, on this warrant. He in turn submits a register that goes with—maybe there might be 50 or 4000 warrants go down to the treasurer at the same time. He signs all of these and transmits them to the State Treasurer for his registry. And that becomes an outstanding obligation against treasury funds until the warrant is returned for—for payment. The State Treasurer redeems it and when he redeems it he transmits the warrants back to the State Budget

Officer, who, in turn, becomes custodian of that paid document.

"Q. Now, prior to the time that the treasurer—or at the time the treasurer signs that, does he return it to the state auditor? A. Yes, sir.

"Q. Then where does it go? A. State auditor then delivers it to the agency whose funds the said warrant is charged against.

"Q. And in this particular case with reference to this exhibit, what agency would that be? A. Highway Department."

R. T. Snyder, office manager and bookkeeper for Layman & Sons, Contractors, was called as a witness for the State. On direct examination, he testified that he placed an endorsement stamp on the warrants in the office of Layman & Sons, Contractors, in Tulsa County. He testified that he was a notary public and that T. C. Layman, one of the partners, signed and swore to the various claims. He also identified the warrants issued in payment. He testified that Layman & Sons received payment for the work performed and materials delivered on contract I–591(20). He said payment was made through the State Highway Department at Oklahoma City and warrants were sent through the mail; that the envelopes bore post marks: "Oklahoma City".

On cross-examination witness reiterated that all checks for the work in question were mailed from Oklahoma City.

The question is, do the facts recited fix the venue for the offense charged in Tulsa County, or Oklahoma County, one or both.

■ It is the law that persons accused of crime may waive rights given them by the Constitution, but in the absence of waiver, express or implied, they must be accorded the benefits of such provisions. Ex parte Meadows, 70 Okl.Cr. 304, 106 P.

2d 139; Van Brunt v. State, 62 Okl.Cr. 188, 70 P.2d 1103; Ex parte Barnett, 67 Okl.Cr. 300, 94 P.2d 18; Burns v. State, Okl.Cr., 282 P.2d 258.

It is conceded by the State that in Oklahoma "in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed." Art. II, § 20, Okl.Const.

Similar provisions are contained in the constitutions of sister states.

It is further conceded by the State that the money paid to the Layman firm by way of State Warrants, was made in Oklahoma County, where the State Highway Department at intervals caused warrants to be placed in the United States mail addressed to Layman & Sons, Tulsa. Bozarth v. State, 56 Okl.Cr. 424, 41 P.2d 924; Carroll v. State, Okl.Cr., 347 P.2d 812 (December, 1959); Owen v. State, 22 Okl.Cr. 419, 211 P. 1059 citing 16 C.J. 190; 11 R.C.L. 854. And see 22 C.J.S. Criminal Law § 185, p. 287; Am.Jur. § 89, p. 492; 141 A.L.R. 241; 30 A.L.R.2d notes 1279, 1283.

■ The State cited the case of Rhodes v. State, 58 Okl.Cr. 1, 49 P.2d 226, 231, where Doyle, J., speaking for this Court, said:

"To constitute the crime of obtaining property under false pretenses the essential elements are: A false statement of past or existing facts by one person to another with intent to defraud; such statement must be reasonably calculated to deceive that other. It must be so designed as to induce such other to part with his property, and such design must be accomplished, by means of the false pretenses made use of for that purpose." [8]

It is urged by the State that venue of the crime charged was in either Oklahoma County, where it is undisputed the money was obtained, or in Tulsa County where the estimates were signed by defendant

---

8. See for a fuller definition of the offense: Reeves v. State, 68 Okl.Cr. 163, 96 P.2d 536; Taylor v. Territory, 2 Okl. Cr. 1, 99 P. 628, all cited in Carroll v. State, Okl.Cr., 347 P.2d 812–822.

and approved by the resident engineer and the district engineer of the State Highway Department, and where the materials were furnished.

In support of its position, the State cites 22 Okl.St.Ann. § 124, which provides as follows:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

In Carroll v. State, supra (347 P.2d 812–818) we pointed out that but for a statute like the above, the general rule has been that the crime of obtaining money by false pretenses is completed where the money or property is obtained. We stated that the general rule had been enlarged in Oklahoma by the above statutory provisions. Cases from this Court and other courts illustrative of the application of the statute were discussed.

The case of Troup v. State, 1931, 51 Okl.Cr. 438, 2 P.2d 591, is said by the State to illustrate the applicability of the statutory provisions just quoted. There Chappell, J., speaking for this Court said:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county." [9]

In the Troup case the evidence disclosed that the false pretenses were made in person to the victim at Taft, Muskogee County. That later a written contract based on the representations made in Muskogee County was entered into between Troup and his victim in Oklahoma County. That thereafter some of the payments were made in Caddo County, that one payment was made in Seminole County. This Court noted that Iowa had a statute similar to our 22 O.S.A. § 124, and cited State v. Gibson, 132 Iowa 53, 106 N.W. 270, 271. There the defendant, an insurance agent, forwarded applications by mail from Chickasaw County, Iowa, to an insurance company in Des Moines, Polk County. Pursuant to defendant's request, the insurance association mailed a check for $24.80 to him drawn upon a bank in Des Moines. The check was received by the defendant in Chickasaw County, endorsed by him and cashed by a bank in said county. The check finally reached the Des Moines bank and was honored and charged to the account of the insurance company. The defendant was prosecuted in Polk County, where the application with the false representations was received by the insurance company and acted on with subsequent issuance of the check and placing it in the mails addressed to the defendant in Chickasaw County. Defendant insisted that venue was in Chickasaw County where he mailed the application and where he actually received the check. The Iowa Supreme Court said:

"Under the evidence there can be no doubt that the defendant made the false pretenses with which he is charged in Polk County, Iowa; for the applications were there received and acted upon by the insurance asso-

9. See annotation for illustration. The statutory provisions defining the particular crime is important. In Bray v. State, 1926, 35 Okl.Cr. 37, 247 P. 415, Bray was interested in a 40-acre tract of land in the Beeby field of Pontotoc County, and a local dealer was also interested. Bray found the record owners in Oklahoma County and obtained a deed in that county. It developed that a suit had been filed contesting title to the land and when Bray had his deed recorded at Ada he was arrested for buying land in suit. He denied any knowledge of the suit, and counsel contended that the Pontotoc County court was without territorial jurisdiction, but the trial court held that by reason of what is now 22 O.S. 1951 § 124, the recording of the deed was an element of the crime and your writer's client was convicted, but on appeal to the Court of Criminal Appeals the case was reversed on the ground that the crime was completed when the deed was obtained. And see Application of Severns, Okl.Cr., 330 P.2d 748.

ciation. Placing the same in the mail to be forwarded to the insurance company was not, so far as the criminal aspect of the case is concerned, a false pretense in the county where the applications were prepared or received by the defendant. State v. House, 55 Iowa 446, 8 N.W. 307." [10]

Venue was fixed where the false representations came to the attention of the insurance association under the statute similar to our 22 O.S.A. § 124, supra, and the court found it unnecessary to determine just what might have also fixed venue in any other county.

But this Court in the Troup case, said:

"Under section 2429, supra [Tit. 22 O.S.A. § 124], and authorities cited, it is immaterial whether any payments were made in Muskogee county. The venue may be laid where the false representations are made, or in any county where payments were made by reason thereof. Since the representations were made in Muskogee county, the venue was properly laid in that county."

We find no fault with the rule announced in the Troup case. The matter of mailing documents containing false representations was not there involved. The false representations had been made orally by the defendant in Muskogee County. 22 O.S.A. § 124 was correctly applied.

The State cites the cases of People v. Bocchio, 1926, 80 Cal.App. 138, 251 P. 672, and State v. Knutson, 1932, 168 Wash. 633, 12 P.2d 923, which cases support the principle of law stated in the Troup case.

It is argued by the State that the trial court erred in applying the law announced in Bozarth v. State, supra, 56 Okl.Cr. 424, 41 P.2d 924, and Carroll v. State, supra,

Okl.Cr., 347 P.2d 812, to the territorial jurisdictional facts developed in the within case and heretofore recited.

In the Bozarth case the false representations were made by way of filing a verified claim for salary that contained false statements. This claim and others like it were executed, notarized and placed in the United States mails in Okmulgee County, addressed to the State Auditor of Oklahoma at the State Capitol, Oklahoma City, Oklahoma County. Bozarth was prosecuted in Oklahoma County. This Court said:

"One who, by means of a false claim, sent from one county in the state to another county therein and thereby induced a person in the latter county to deposit property in the United States mail for the person making such claim, may be prosecuted in the latter county for obtaining property by false pretenses, since the United States mail is the agent of the person to whom addressed."

In the Carroll case the pamphlet that contained the alleged false statements was prepared in Oklahoma County and there placed in the mails and addressed to the prosecuting witness at Shattuck, in Ellis County, where he read the false prospectus concerning certificates in an investment trust fund of Selected Investments Corporation. Relying on these statements, he went to LaVerne in Harper County and contacted Walter Lake, a bond salesman, and signed an order for $6,000 worth of certificates. The money was paid to Lake, who was to send it to Selected Investments, Oklahoma City. Later the prosecuting witness got his certificates.

This Court held that the false representations were made in Ellis County,

10. In United States v. Thayer, 1908, 209 U.S. 39, 28 S.Ct. 426, 52 L.Ed. 673, 675, Justice Holmes of the United States Supreme Court, concerning solicitation pointed out that the solicitation was made where the communication received and not where mailed, but on the other hand recognized that an indictment for

obtaining money by false pretenses was generally held to have been committed at the place where drafts were put into the post by the defrauded person. He noted the trial court in the Thayer case had become misled by such cases in applying such rule to the solicitation case then before the Supreme Court for review.

where communicated, and held that the money was paid in Harper County; that prosecution for false pretenses could not be made in Oklahoma County, but in view of 22 O.S.1951 § 124, prosecution, if pursued, must be in Harper County or Ellis County.

From the facts recited we find that the main distinguishing feature between the within case and the Bozarth case is that in Bozarth while the false claim was prepared and notarized in Okmulgee County, it was mailed directly to the State Auditor for payment, while in the within case the estimate or claim had to, as a preliminary for forwarding to the State Highway Department in Oklahoma City, pass through intermediate channels. But it did reach the State Auditor.

In Carroll v. State, supra, the statements, the basis for prosecution, were mailed directly to the victim without sanction of anyone else on the say.

What is the effect of this difference? We have never before had a similar fact situation arise in Oklahoma. We therefore look to other states. The trial judge, well understanding the holdings in Bozarth and Carroll, found that in Louisiana the Supreme Court of that state had treated a case with a fact situation almost precisely as presented by the within case.

There in State v. Pollard, 1949, 215 La. 655, 41 So.2d 465, 467, a prosecution for theft by means of a fraudulent estimate made to the Department of Highways in connection with a road project, the state, in order to bring the case within a statute providing that where the several acts constituting a crime "shall have been committed in more than one parish, the offender may be tried in any parish where a substantial element of the crime has been committed", relied on the fact that the materials were omitted from a road project in Caldwell Parish; that the records of the project engineer, alleged to be falsified to perfect the scheme, were kept there; and that the partial and first estimate, under which the alleged theft was perpetrated,

was made there and sent from that parish. It appeared, however, that the office of the Department of Highways was located in Baton Rouge, the State capital of Louisiana; that the fraudulent estimate was received by the department in Baton Rouge; that the contract was entered into in East Baton Rouge Parish; that the check for payment of the partial first estimate was prepared in East Baton Rouge Parish; that the check was drawn upon a bank located in East Baton Rouge Parish; that the check was mailed to the contractor in Bossier Parish where it was deposited to the contractor's account.

The Supreme Court of Louisiana reversed the conviction of the appellants, annulled the indictment and discharged the defendants. Said the Court:

"The facts relied on by the State as constituting a substantial element of the crime are merely the preparation of a fraudulent scheme which was consummated in Baton Rouge by inducing the Department of Highways through a fraudulent estimate to part with the money. What induced the Department of Highways to part with the money was its reliance on the estimate it had received in Baton Rouge. The devising and arranging of the means necessary for the commission of a crime are nothing more than preparation for the commission of the offense. The manner or means employed in the perpetration of an offense are not an essential element of a crime except where they are made so in the statute defining the offense. The manner and means employed in the commission of a crime are varied and were they considered elements of an offense it would bring about chaos and there would be no standard to govern the courts in determining the elements of an offense."

The trial court also noted a Pennsylvania case.

It is of interest because of its bearing on the difference in the fact situation in the within case and the Bozarth and Carroll

**1032**

cases, and the case of Commonwealth v. Rogers, 187 Pa.Super. 471, 144 A.2d 662, 667. It is analogous as to the point we are here interested in. There the defendants were charged with a conspiracy to cheat and defraud the Pennsylvania Turnpike Commission by scheme by which the Commission paid for materials used in construction not actually furnished. It will not be necessary to state all the facts. Suffice to say the mechanics for performance of work on a strip of the turnpike located in Lackawanna County and receiving pay therefor, was much the same as in the within case, and the Pollard case. But the particular defendants were not prosecuted in Lackawanna County, although that is where the evidence conclusively showed the conspiracy was entered into whereby the Rogers Construction paid certain road inspectors and others to furnish slips showing the delivery of more materials than actually received. As the court said:

"It is well settled that prosecution for a criminal conspiracy may be brought in the county where the unlawful combination or confederacy was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of that unlawful combination or confederacy. Com. v. Mezick, 147 Pa.Super. 410, 413, 24 A.2d 762."

It is important to note, under the facts, the court's comments as to overt acts.

The prosecution was brought at Harrisburg, Dauphin County (the State Capital), the destination of the estimate or claim approved by the district construction engineer of the Turnpike Commission on the basis of copies of the delivery slips sent to the Dupont (Luzerne County) field office of the Turnpike Commission. No final approval was made in the field or district office, and no bills were paid therefrom. But after approval by the district engineer, the periodic estimate was dispatched by automobile to the Commission at its main office at Harrisburg. Following recheck by the engineers at Harrisburg, the periodic estimates

or bills of Rogers Construction Company were processed by the offices of the Turnpike Commission. Checks in payment were drawn on the Fidelity-Philadelphia Trust Company of Philadelphia and mailed to Rogers Construction Company at Scranton. The latter received and cashed two checks under their contracts.

The defendants objected to the territorial jurisdiction of the court of Quarter Sessions of Dauphin County. The appellate court, among other things, said:

"It is argued that there was no overt act in furtherance of the conspiracy committed in Dauphin County. They contend that the conspiracy was formed in Lackawanna County and that the overt acts took place either in Lackawanna County or Luzerne County. Notwithstanding that the conspiracy may have been formed in Lackawanna County, that the fraudulent slips were issued in that county, and that the false periodic estimates were presented to the field office of the Turnpike Commission in Dupont, Luzerne County, and then delivered to the main office of the commission in Harrisburg, it was at the main office of the commission at Harrisburg that action was intended to be taken upon the fraudulent claims and checks thereupon to be issued to Rogers Construction Company. * * * The delivery of the false invoices by courier from the field office in Luzerne County to the main office of the commission in Harrisburg was no different than where a defendant personally carried the fraudulent documents to Harrisburg or sent them by agent or in the regular course of the mail. The fact that the false invoices were preliminarily checked in the field office does not negative the occurrence of the overt act in Dauphin County. The fraudulent weight or delivery slips and the false periodic estimates were made in furtherance of the conspiracy in Lackawanna County or Luzerne County. But such estimates for partial payment were made for the ultimate pur-

pose of securing the final approval and payment of the false invoices by the commission at Harrisburg. It was only at that place that final approval could be given and the checks prepared and issued. Consequently, it was in Dauphin County that the fraudulent scheme was consummated when the Turnpike Commission received the false slips and invoices and acted upon them. See State v. Pollard, 215 La. 655, 41 So.2d 465, 468."

It is significant that the court in reaching its conclusion cited Pollard v. State, supra.

Judge Watkins filed a dissenting opinion. He thought the court in Dauphin County did not have jurisdiction. Some of the defendants had entered pleas of guilty in Lackawanna County.

█ In the case before us, the defendants are not charged with a conspiracy, and it is not alleged that any of the State's inspectors or officials conspired with the defendants in Tulsa County to defraud the State. Here it is a question of where the false pretenses are deemed to have been made. What was said in the Carroll case, in principle, becomes important. There, in the body of the opinion this Court, with reference to the false pretense statute (21 O.S.1951 § 1542 and the same language would apply to § 1541 of the Title) said:

"Obviously then, the false pretense is an element of the offense only insofar as the money is obtained 'by color and aid thereof'. The making of the false pretense is an act 'constituting or requisite to the offense' only when it is the means by which the money is obtained. It can be the means only when, and not until, it is communicated. Therefore, until the false pretense is received, it cannot be the inducement to part with the money. As a liable and slander has no life until it is published, the false pretense has no existence until it is communicated to the proposed victim. It is not made until received and read by him."

In the Carroll case this Court repudiated the dicta in the Bozarth case, where it was indicated that the facts developed in Bozarth might by reason of 22 O.S.1951 § 124 justify prosecution in Okmulgee County.

█ From the above we must hold that the estimates or claims in question, if false, while prepared in Tulsa County, and were approved by the local and district engineers of the Highway Department there, were made for the ultimate purpose of securing the final approval and payment from the State Auditor at Oklahoma City. It was only at that place where the false representations charged were communicated and acted upon. Thereafter approval by the Highway Department was completed. The State Budget Director "pulled," as he said, the contract on file with him, and the claims audited in accordance with the contract. A warrant in payment of the claims was then prepared for action of the State Auditor, who signed and sent to the State Treasurer for registry. The warrants were then turned to the Highway Department and mailed out by the department to the payee.

█ The manner or means employed in the perpetration of an offense are not an essential element of a crime except where they are made so in the statute defining the offense. Therefore, the false pretenses alleged that caused the State of Oklahoma to part with the money said to have been obtained, took place in Oklahoma County where communicated to and acted upon by the State Auditor causing the money to be paid.

Having reached this conclusion, it follows that the action of the district court of Tulsa County in sustaining defendant's motion to dismiss for lack of venue must be, and is sustained and affirmed, and this applies to each of the defendants charged in the within case, under the stipulation shown in the record and heretofore mentioned.

NIX and BRETT, JJ., concur.